# SUPPLEMENT.

## OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

A statute, providing that a city or town may, by ordinance or by-law, restrict buildings to be used for particular industries, trades, manufacturing or commercial purposes to specified parts of the municipality, or may exclude them from specified parts, or may provide that such buildings, if situated in certain parts of the municipality, shall be subject to special regulations as to their construction or use, would be within the powers conferred by art. 60 of the Amendments to the Constitution of the Commonwealth.

A further provision in the statute above described empowering the municipality to provide by ordinance or by-law that certain kinds of dwelling houses and tenement houses shall be restricted to specified parts of the municipality or shall be excluded from specified parts, or that dwelling houses or tenement houses situated in specified parts shall conform to regulations in respect to their construction or use which do not apply to such buildings in other parts of the municipality, also would be within the powers conferred by art. 60 of the Amendments to the Constitution of the Commonwealth.

A provision of the same statute, that, for the purposes above described, the municipality may be divided into districts and zones and the construction and use of buildings in each district or zone may be regulated as above provided, would be constitutional.

If a section of the statute above described, reading, "The provisions of this act shall be carried out in such manner as will best promote the health, safety, convenience and welfare of the inhabitants, will lessen the danger from fire, will tend to improve and beautify the city or town, will harmonize with its natural development, and will assist the carrying out of any schemes for municipal improvement put forth by any municipal planning board or board of survey or other like authority," is interpreted as requiring that all the elements there named shall be considered in their due proportions, and the words therein, "schemes for municipal improvement," are interpreted as including only such schemes as do not violate the rights of property secured by the Constitutions of the Commonwealth and of the United States against public interference through the police power, such section would be constitutional.

No provision of the State or of the Federal Constitution would be contravened by a statute containing the provisions above described and also appropriate provisions making the delegation to cities and towns and to municipal officers of the powers necessary to carry out the purposes of the statute; requiring hearings after proper notices before the establishment of the ordinances and by-

laws described in the statute; providing for appropriate proceedings on appeal from certain acts of municipal officers under ordinances and by-laws established according to the statute and for the enforcement of the provisions of the statute by proceedings in the Superior Court; exempting from the operation of the statute existing structures and the existing use of any building, but not so exempting any alteration of an existing structure to provide for its use for a purpose or in a manner substantially different from that to which it was put before the alteration, and also exempting any existing or proposed building used or to be used by a public service corporation if the department of public utilities, after a public hearing, should decide that the situation of the building in question is reasonably necessary for the convenience or welfare of the public. The provisions of a section of the statute above described, reading, "No ordinance or by-law established hereunder shall be repealed or modified except after reasonable notice of the proposed repeal or modification, and an opportunity to the objectors to be heard thereon. If any owner of real estate which would be affected by the proposed ordinance or by-law objects thereto, it shall not be established except by a unanimous vote of all the members of the city council of the city, or of the voters of the town voting thereon; and in no case shall such an ordinance or by-law be repealed or modified except by a two thirds vote of all the members of the city council, or by a two thirds vote of the voters of a town voting thereon at an annual or special town meeting duly called for the purpose," would be constitutional.

THE following order was passed by the House of Representatives on April 29, 1920, and on April 30, 1920, was transmitted to the Justices of the Supreme Judicial Court.

ORDERED, That the Justices of the Supreme Judicial Court be requested to inform the House of Representatives whether, in their opinion, the provisions of the Bill to authorize cities and towns to limit buildings according to their use or construction (House, No. 1660), now pending, and copies of which are transmitted herewith, would be legal and constitutional if enacted into law.

House Bill No. 1660, referred to above, was as follows:

An Act to authorize Cities and Towns to limit Buildings according to their Use or Construction to Specified Districts.

Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same, as follows:

SECTION 1. A city or town may, by ordinance or by-law, restrict buildings to be used for particular industries, trades, manufacturing or commercial purposes to specified parts of the city or town, or may exclude them from specified parts of the

city or town, or may provide that such buildings, if situated in certain parts of the city or town, shall be subject to special regulations as to their construction or use. A city or town may also, by ordinance or by-law, provide that certain kinds of dwelling houses and tenement houses shall be restricted to specified parts of the city or town, or shall be excluded from specified parts of the city or town, or that dwelling houses or tenement houses situated in specified parts of the city or town shall conform to certain regulations in respect to their construction or use which do not apply to such buildings in other parts of the city or town. For the above purpose the city or town may be divided into districts or zones, and the construction and use of buildings in each district or zone may be regulated as above provided.

SECTION 2. The provisions of this act shall be carried out in such manner as will best promote the health, safety, convenience and welfare of the inhabitants, will lessen the danger from fire, will tend to improve and beautify the city or town, will harmonize with its natural development, and will assist the carrying out of any schemes for municipal improvement put forth by any municipal planning board or board of survey or other like authority. Due regard shall be paid to the characteristics of the different parts of the city or town, and the ordinances or by-laws established hereunder in any city or town shall be the same for zones, districts or streets having substantially the same character.

SECTION 3. No ordinance shall be established hereunder in any city until after a public hearing thereon has been held, notice of which shall be published, at least thirty days before the hearing, in a newspaper published in the city concerned, or in the county if no newspaper is published in the city. The hearing shall be given by the city council or by such officer, board, commission or committee as may be designated or appointed for the purpose by the city council. No by-law shall be established hereunder by any town except at an annual or special town meeting the warrant for which contains a notice of the proposed by-laws.

SECTION 4. It shall be the duty of the superintendent of buildings, or the officer or board having supervision of the construction of buildings, or the power of enforcing the municipal building laws, and if in any town there is no such officer or board, then it

shall be the duty of the selectmen, to withhold a permit for the construction or alteration of any building if the building as constructed or altered would be in violation of any ordinance or by-law established hereunder; and it shall be the duty of municipal officers to refuse any permit or license for the use of a building which use would be in violation of any ordinance or by-law established hereunder.

SECTION 5. Any person who is aggrieved by the refusal of a permit under the provisions of the preceding section may appeal to the municipal officer or board to which a right of appeal lies from decisions under the building laws of the city or town, and if there is no such officer or board, then the appeal shall lie to the city council of the city or to the selectmen of the town, or to such officer, board, commission or committee as shall be designated or appointed by the city council of the city or by the selectmen of the town to act as a board of appeals hereunder.

SECTION 6. The Superior Court shall have jurisdiction to enforce the provisions of this act, and may restrain by injunction any violation thereof.

SECTION 7. This act shall not apply to existing structures nor to the existing use of any building, but it shall apply to any alteration of a building to provide for its use for a purpose, or in a manner, substantially different from the use to which it was put before the alteration.

SECTION 8. This act shall not apply to any existing or proposed building used or to be used by a public service corporation: *provided*, that upon a petition of the corporation, the department of public utilities shall, after a public hearing, decide that the situation of the building in question is reasonably necessary for the convenience or welfare of the public.

SECTION 9. No ordinance or by-law established hereunder shall be repealed or modified except after reasonable notice of the proposed repeal or modification, and an opportunity to the objectors to be heard thereon. If any owner of real estate which would be affected by the proposed ordinance or by-law objects thereto, it shall not be established except by a unanimous vote of all the members of the city council of the city, or of the voters of the town voting thereon; and in no case shall such an ordinance or by-law be repealed or modified except by a two thirds vote of

all the members of the city council, or by a two thirds vote of the voters of a town voting thereon at an annual or special town meeting duly called for the purpose.

On May 20, 1920, the Justices returned the following answer:

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

We, the Justices of the Supreme Judicial Court, having considered the question on which our opinion is requested under the order of April 29, 1920, a copy whereof is hereto annexed, respectfully submit this answer:

The title and substance of the proposed act support the inference that it is in execution of the power conferred by art. 60 of the Amendments to the Constitution of this Commonwealth. That amendment is in these words: "The General Court shall have power to limit buildings according to their use or construction to specified districts of cities and towns." The constitutionality of the proposed act is to be determined with reference to all other provisions of the Constitution not changed by art. 60 of the Amendments, as well as to that article.

Amendment 60 declares a principle, not a specification of details. It is brief, plain and ample in its grant of power. It conforms to the structure of the original Constitution, which is a frame of government, comprehensive in its provisions, general in its terms, and calculated to endure as the basis of a free and intelligent republic, whatever changes may come. It is to be construed in conformity with that design and is not to be given a constricted interpretation. This amendment was proposed by the Constitutional Convention to the people in 1918. The debates in the convention indicate that the thought uppermost in the minds of those who spoke was to prevent an established residential neighborhood from being injured by the construction or use of buildings whereby the neighborhood would be rendered less desirable for homes.

There is no restriction in the amendment as to the kind of building over which the power is conferred. The only bound set to legislation is the "use or construction" of whatever structures rightly may be described as "buildings." Both "use" and "construction" as well as "buildings" are words of wide signification.

Section 1 of the proposed act is confined strictly to the use and construction of buildings within its scope. It closely follows the words of the amendment except in particulars where sub-classifications are established based on use or construction and general in their terms. All ordinances or by-laws must be fashioned in subordination to the requirements of this section. It relates to two different classes of buildings: 1. Buildings to be used for particular industries, trades, manufacturing or commercial purposes which may be (a) restricted to specified parts of a municipality and excluded from designated districts, or (b) if situated in certain parts made subject to special regulations as to their construction or use. 2. Dwelling houses and tenement houses which may be (a) restricted to described portions of a municipality or excluded from defined areas thereof, or (b) if situated in specified parts of a municipality may be made conformable to certain regulations in respect of their construction or use which are not applicable to such buildings in other parts of the municipality. For these purposes the municipality may be divided into districts or zones.

An ordinance or by-law which segregates manufacturing and commercial buildings on the one side, from homes and residences on the other, is justified by the broad conceptions of the police power created by Amendment 60. It might be warranted independent of that amendment under appropriate circumstances, at least to a limited extent, in the interests of the public health, safety or morals. The establishment of fire limits, the exclusion of wooden buildings therefrom, and the requirement of buildings of specified construction within them, are familiar police regulations of unquestionable validity. Restrictions respecting air spaces and distances between outside walls of buildings, interior fire proof walls, fire escapes and kindred matters, are not uncommon. *Stevens, landowner,* 228 Mass. 368, and cases collected. A limitation of the height of buildings varying according to different districts had been upheld before the amendment. *Welch* v. *Swasey,* 193 Mass. 364, affirmed in 214 U. S. 91. The terms of § 1 of the proposed act authorize great freedom of action to the several cities and towns both in the establishment of parts for the exclusive use of named industries and in regard to the kinds of construction to be permitted. Under its terms owners of vacant

land in certain parts of a city or town may be utterly prohibited from erecting a building for any residential use whatever and compelled to devote it exclusively to a designated industry. Other landowners in other specified places may be required to hold their vacant land solely for residential purposes and deprived of the privilege of utilizing it for commerce, trade or manufacture. While the proposed act does not apply to existing structures or uses, no alteration can be made looking to a substantially different use except in accordance with the act 'and ordinances or by-laws adopted pursuant to its authority. It needs no argument to demonstrate that the exercise of such power in many conceivable instances would be a serious limitation upon what have been commonly regarded as incidents of ownership. All this, however, is clearly within the purview of Amendment 60.

The delegation of power by § 1 to cities and towns and to other municipal officers by succeeding sections is within the authority of the Legislature. *Commonwealth* v. *Slocum*, 230 Mass. 180, 190. Manifestly Amendment 60 cannot be carried into effect by general laws.

The dominating provisions of the proposed act are in § 1. All the following sections are subsidiary and ancillary to it. Several considerations are enumerated and combined in the first sentence of § 2 as a single composite and imperative guide for the execution of the authority conferred by § 1. We interpret "and" in this sentence in its natural sense as conjunctive and not as distributive. All the considerations there named must be given appropriate weight. No one or more less than all can be selected as the exclusive basis for action. Most of them are well recognized separately as justifications for the exercise of the police power. The public health, the public safety, the public morals, and, when defined with some strictness so as not to include mere expediency, the public welfare, each repeatedly has been held sound ground for the exercise of the police power. *Commonwealth* v. *Strauss*, 191 Mass. 545, 550. *Holcombe* v. *Creamer*, 231 Mass. 99, 104–107.

Intelligent municipal planning to the end of furnishing access to pleasant natural scenery was recognized and held by this court many years ago to warrant the exercise of the power of eminent domain and the expenditure of public moneys. *Higginson* v.

*Nahant*, 11 Allen, 530, 536. Legitimate expenditure of public money and exercise of eminent domain cover a broader field than does the police power in its limitations upon the rights of use of private property.

Assistance in "the carrying out of any schemes for municipal improvement put forth by any municipal planning board . . . or other like authority" well might go beyond rational limits of the exercise of the police power. *Lexington* v. *Suburban Land Co.* 235 Mass. 108. This clause of § 2 of the proposed act we interpret as meaning that the carrying out of the provisions of the act shall be in furtherance of such schemes for municipal improvement as do not violate the rights of private property secured by the State and Federal Constitutions against public interference through the police power. As thus interpreted, it is not subject to objection on constitutional grounds.

The part of the first sentence of § 2 which challenges most serious attention is the provision that heed shall be given in combination with the other factors there named to that which "will tend to improve and beautify the city or town" and "will harmonize with its natural development." It has been decided quite generally, if not universally, by courts in which the question has been raised, that aesthetic considerations alone or as the main end do not afford sufficient foundation for imposing limitations upon the use of property under the police power. See cases collected, L. R. A. 1917 A 1216. Before the adoption of Amendment 60, it was said by Chief Justice Knowlton in *Welch* v. *Swasey*, 193 Mass. 364, 375, "The inhabitants of a city or town cannot be compelled to give up rights in property, or to pay taxes, for purely aesthetic objects; but if the primary and substantive purpose of the legislation is such as justifies the act, considerations of taste and beauty may enter in, as auxiliary." We think that this is an accurate statement of property rights under the Constitution of the United States. While the Supreme Court of the United States has not decided, so far as we are aware, that the exercise of the police power cannot rest on aesthetic considerations alone as its sole basis, we draw the inference from what has been said on that subject that at present at all events that foundation, standing alone, hardly would be regarded as sufficient, but it may be considered in a subsidiary way. In *Welch* v. *Swasey*,

214 U. S. 91, at page 107, reference was made, apparently as ground
for upholding the statute, to the fact that this court had held in
deciding that case, and in *Commonwealth* v. *Boston Advertising Co.*
188 Mass. 348, that "the police power cannot be exercised for a
merely aesthetic purpose." In *St. Louis Poster Advertising Co.*
v. *St. Louis*, 249 U. S. 269, a case upholding severely restrictive
police regulations as to the construction and maintenance of bill-
boards, it was said by Mr. Justice Holmes: "Possibly one or two
details, especially the requirement of conformity to the building
line, have aesthetic considerations in view more obviously than
anything else. But as the main burdens imposed stand on other
ground, we should not be prepared to deny the validity of rela-
tively trifling requirements that did not look solely to the satis-
faction of rudimentary wants that alone we generally recognize
as necessary. *Hubbard* v. *Taunton*, 140 Massachusetts, 467, 468."
The statement of the law quoted above from 193 Mass. 375, is
applicable to the requirement of § 2 that beautification of the
city or town may be regarded in carrying out the provisions of
§ 1. The chief aim of the statute is the restriction to specified
districts of buildings based upon use or construction. That has
become a proper subject for legislation by the express terms of
the amendment. It is only in an incidental way that, in carry-
ing out that cardinal object, regard may be given to considera-
tions bearing upon municipal adornment or embellishment. If
attention could under the statute be directed to that factor alone
a different question would be presented which is not involved in
the present order and which we do not need now to discuss. We
interpret the words of § 2, however, as requiring consideration
in due proportion of all the elements there named. Enhancement
of the artistic attractiveness of the city or town can be considered
in exercising the power conferred by the proposed act only when
the dominant aim in respect to the establishment of districts based
on use and construction of buildings has primary regard to other
factors lawfully within the scope of the police power; and then it
can be considered, not as the main purpose to be attained, but
only as subservient to another or other main ends recognized as
sufficient under Amendment 60 and the general principles gov-
erning the exercise of the police power.

The last sentence of § 2 preserves equality of classification and

in substance directs the attention of municipal officers specifically to the constitutional mandate for equal protection of the laws to all those included within different zones or neighborhoods established according to reason and with justice.

No discussion is required to demonstrate that §§ 3, 4, 5 and 6 are not in contravention of any part of the Constitution.

There is recognition in § 7 that rights already acquired by existing use or construction of buildings in general ought not to be interfered with. See *Commonwealth* v. *Alger*, 7 Cush. 53, 103, 104.

The provision in § 8 respecting buildings of public service corporations is within settled principles touching legislative control over property devoted to that use. *Norwood* v. *New York & New England Railroad*, 161 Mass. 259. *Minneapolis & St. Louis Railroad* v. *Minnesota*, 193 U. S. 53. *Missouri Pacific Railway* v. *Omaha*, 235 U. S. 121.

The protection afforded by § 9 to the property owners in zones or districts once established stands on the same footing as the main purpose of the act. It avoids the difficulty which was held insurmountable in *Eubank* v. *Richmond*, 226 U. S. 137. It is not necessary now to determine the precise meaning of the word "owner" in § 9. It doubtless is not confined to those who are holders of a technical title in fee, but is of broader scope. *Hillis* v. *O'Keefe*, 189 Mass. 139. *Union Trust Co.* v. *Reed*, 213 Mass. 199, 201. *Downey* v. *Bay State Street Railway*, 225 Mass. 281, 284. *Hurnanen* v. *Nicksa*, 228 Mass. 346, 350. Further provisions of this section are designed to secure owners against the exercise of limitations upon their rights by the police power save in instances where demanded by overwhelming public sentiment that such limitation is required to promote the public convenience, general prosperity and community welfare. There is no denial of the protection of equal laws in this because all within the designated territory are treated alike and stand on the same footing. The differences in that section regarding forms of procedure and votes between those who reside in towns and in cities are only such as are inherent in the two systems of government for municipalities which have prevailed for a century in this Commonwealth. The city council is commonly treated as the equivalent in the city form of municipal government of the town meeting in

the town form of government. *Opinion of the Justices*, 229 Mass. 601, 609.

Doubtless questions may arise under the proposed act, if enacted into law, which cannot be foreseen and which may prove perplexing. But we are able to perceive in it nothing contrary to the fundamental law of this Commonwealth.

Thus far we have treated the question solely with reference to the Constitution of this Commonwealth. It is necessary to examine it with reference to the Constitution of the United States, as to the validity both of Amendment 60 to our Constitution and of the proposed act.

A State can no more violate a provision of the Constitution of the United States by its own Constitution than it can by the act of its legislative, executive or judicial authorities. The Constitution of the United States within the sphere covered by it is supreme over all the people and over each act of every instrumentality of government established within or by the several States. The Constitution of a State stands no higher or stronger in this particular than any other act of a State. This principle has been illustrated by decisions of the United States Supreme Court holding invalid State constitutional provisions impairing the obligations of contracts, *Gunn* v. *Barry*, 15 Wall. 610, 623, *Fisk* v. *Jefferson Police Jury*, 116 U. S. 131, *New Orleans Water Works Co.* v. *Rivers*, 115 U. S. 674, 681, contravening the terms of a treaty made under the authority of the United States, *Hauenstein* v. *Lynham*, 100 U. S. 483, 488, and violating the Fifteenth Amendment to the Constitution of the United States as to the right of suffrage, *Guinn* v. *United States*, 238 U. S. 347. This principle applies as well to the Fourteenth Amendment as to every other part of the Federal Constitution. *Scott* v. *McNeal*, 154 U. S. 34, 45.

Certain principles have been laid down by the Supreme Court of the United States expressive of its attitude with reference to the exercise of the police power by the several States. It has been declared repeatedly in various forms of words that the police power is not susceptible of limiting and confining definition. For example, it was said in *Camfield* v. *United States*, 167 U. S. 518, 524, "the police power is not subject to any definite limitations, but is co-extensive with the necessities of the case and the safe-

guard of the public interests." In *Cusack Co.* v. *Chicago*, 242 U. S. 526, 530, 531, it was said in an opinion sustaining an ordinance prohibiting bill boards within a described district: "while this court has refrained from any attempt to define with precision the limits of the police power, yet its disposition is to favor the validity of laws relating to matters completely within the territory of the State enacting them and it so reluctantly disagrees with the local legislative authority, primarily the judge of the public welfare, especially when its action is approved by the highest court of the State whose people are directly concerned, that it will interfere with the action of such authority only when it is plain and palpable that it has no real or substantial relation to the public health, safety, morals, or to the general welfare. *Jacobson* v. *Massachusetts*, 197 U. S. 11, 30." A statement, since frequently quoted, is found in *Chicago, Burlington & Quincy Railway* v. *Drainage Commissioners*, 200 U. S. 561, 592: "We hold that the police power of a State embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety. . . . And the validity of a police regulation, whether established directly by the State or by some public body acting under its sanction, must depend upon the circumstances of each case and the character of the regulation, whether arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose." These words were used in an opinion upholding a police regulation requiring a railroad to enlarge at its own expense a bridge opening over a stream, adequate in size to pass the water naturally flowing therein, in order to provide for the increased volume of water caused by the establishment of a drainage district.

Numerous State laws and local ordinances of this general nature have been declared valid by the Supreme Court of the United States. In *Fischer* v. *St. Louis*, 194 U. S. 361, an ordinance of St. Louis prohibiting the erection or establishment of any cow stable within the city limits without a license was sustained although its effect was to deprive the owner of the valuable use of buildings adapted for that purpose. In *California Reduction Co.* v. *Sanitary Reduction Works*, 199 U. S. 306, and *Gardner* v. *Michi-*

*gan,* 199 U. S. 325, compliance with a general requirement for the cremation of garbage was enforced although thereby the owner was deprived of elements of value in his own property. In *Bacon* v. *Walker,* 204 U. S. 311, a statute prohibiting the grazing of sheep within two miles from the dwelling houses of possessory claimants of land was sustained, and in *Omaechevarria* v. *Idaho,* 246 U. S. 343, a law requiring the segregation of sheep for grazing on certain ranges and utterly excluding them from ranges previously occupied by cattle was upheld, in both the statute relating to the public domain of the United States in the absence of legislation by Congress. In *Manigault* v. *Springs,* 199 U. S. 473, deprivation of easy access to land by means of the construction of a dam authorized by law, and raising of water to such level as to require expensive constructions to ward it off from the owner's land, was decided not to exceed the lawful exercise of police power. In *Reinman* v. *Little Rock,* 237 U. S. 171, the plaintiff was held to be remediless against the operation of an ordinance prohibiting the maintenance of a stable for horses, although he had conducted business for a long time at the same place and had established permanent structures at great expense. In *Cusack Co.* v. *Chicago,* 242 U. S. 526, it was said in substance that an ordinance wholly debarring the erection of bill boards within certain districts was invulnerable. In *Pierce Oil Corp.* v. *Hope,* 248 U. S. 498, an attack upon an ordinance forbidding the storage of petroleum and gasoline within three hundred feet of any dwelling house was shortly disposed of as being well within the police power. It was held in *Northwestern Laundry* v. *Des Moines,* 239 U. S. 486, that a law declaring the emission of dense smoke in populous neighborhoods a nuisance and restraining it, was not violative of constitutional rights. In *Welch* v. *Swasey, supra,* a statute of this Commonwealth limiting the heights of buildings in Boston and prescribing different heights in residential and business sections, was held to be a permissible exercise of the police power. In this connection it is to be noted that a statute declaring fences and other structures above six feet in height nuisances when maintained for the purpose of annoying the owners or occupants of adjoining property, and providing for a remedy, was decided by this court to be constitutional in *Rideout* v. *Knox,* 148 Mass. 368, and the prohibition of the collection

and storage of old rags and such like material within a circle the radius of which was two miles from the centre of the city, without a special license, was upheld in *Commonwealth* v. *Hubley,* 172 Mass. 58. See also *Sawyer* v. *Davis,* 136 Mass. 239. In *Hadacheck* v. *Los Angeles,* 239 U. S. 394, an ordinance interdicting brickyards within a certain area was sanctioned although thereby the petitioner was deprived of the valuable use of costly investments in land, machinery, buildings and fixtures, made at a time when the land was outside the city limits and free from any regulations. It was said at page 410:` "The principle [that the police power cannot be arbitrarily exercised] is familiar, but in any given case it must plainly appear to apply. It is to be remembered that we are dealing with one of the most essential powers of government, one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. A vested interest cannot be asserted against it because of conditions once obtaining. *Chicago & Alton Railroad* v. *Tranbarger,* 238 U. S. 67, 78. To so hold would preclude development and fix a city forever in its primitive conditions. There must be progress, and if in its march private interests are in the way they must yield to the good of the community. The logical result of petitioner's contention would seem to be that a city could not be formed or enlarged against the resistance of an occupant of the ground and that if it grows at all it can only grow as the environment of the occupations that are usually banished to the purlieus." For somewhat analogous cases see *Murphy* v. *California,* 225 U. S. 623; *Sligh* v. *Kirkwood,* 237 U. S. 52; *Miller* v. *Strahl,* 239 U. S. 426; *Rast* v. *Van Deman & Lewis,* 240 U. S. 342; *Armour & Co.* v. *North Dakota,* 240 U. S. 510; *Hutchinson Ice Cream Co.* v. *Iowa,* 242 U. S. 153; *Jones* v. *Portland,* 245 U. S. 217; *Hebe Co.* v. *Shaw,* 248 U. S. 297; *Hamilton* v. *Kentucky Distilleries & Warehouse Co.* 251 U. S. 146, 157, 158.

It has been said in a slightly different connection that laws and ordinances of this general nature do not constitute an "appropriation of private property, but merely a lessening of value due to a permissible restriction imposed upon its use," *Jacob Ruppert* v. *Caffey,* 251 U. S. 264, 303, and that the person suffering in this

way must be held to be compensated by the general benefit to the community of which he is a member.

On the other hand, innocuous occupations may not be wholly prohibited by the State, *Adams* v. *Tanner*, 244 U. S. 590; arbitrary inhibition of lawful business within designated territory without some rational ground will not be enforced, *Dobbins* v. *Los Angeles*, 195 U. S. 223; and discrimination as to the fundamental right to acquire and enjoy property, based upon color alone, are unlawful, *Buchanan* v. *Warley*, 245 U. S. 60.

In the light of these principles declared by the Supreme Court of the United States, illumined by instances of their specific application, we are of opinion that the proposed statute cannot be pronounced on its face contrary to any of the provisions of the Federal Constitution or its Amendments. The segregation of manufacturing, commercial and mercantile business of various kinds to particular localities, when exercised with reason, may be thought to bear a rational relation to the health and safety of the community. We do not think it can be said that circumstances do not exist in connection with the ordinary operation of such kinds of business which increase the risk of fire, and which render life less secure to those living in homes in close proximity. Health and security from injury of children and the old and feeble and otherwise less robust portion of the public well may be thought to be promoted by requiring that dwelling houses be separated from the territory devoted to trade and industry. The suppression and prevention of disorder, the extinguishment of fires and the enforcement of regulations for street traffic, and other ordinances designed rightly to promote the general welfare, may be facilitated by the establishment of zones or districts for business as distinguished from residence. Conversely, the actual health and safety of the community may be aided by excluding from areas devoted to residence the confusion and danger of fire, contagion and disorder which in greater or less degree attach to the location of stores, shops and factories. Regular and efficient transportation of the breadwinners to and from places of labor may be expedited. Construction and repair of streets may be rendered easier and less expensive if heavy traffic is confined to specified streets by the business there carried on. It is easy to imagine ordinances enacted under the assumed authority of the

proposed act which would exceed the constitutional limits of the police power and be an indefensible invasion of private rights. But it cannot be presumed in advance that municipalities will go outside their just powers and unwarrantably interfere with property. Cases of that sort must be dealt with if and when they arise.

It is not pertinent now to discuss or consider decisions from other States bearing upon conceivable instances of ordinances or statutes close to or exceeding justifiable limits. See *Nahser* v. *Chicago*, 271 Ill. 288; *Quintini* v. *Mayor & Aldermen of Bay St. Louis*, 64 Miss. 483; *Willison* v. *Cooke*, 54 Col. 320; *State* v. *Houghton*, 134 Minn. 226; *Matter of Ormsby* v. *Bell*, 218 N. Y. 212; *Shepard* v. *Seattle*, 59 Wash. 363.

We answer that, in our opinion, the proposed act if enacted into law would be constitutional.

> ARTHUR P. RUGG.
> HENRY K. BRALEY.
> CHARLES A. DE COURCY.
> JOHN C. CROSBY.
> EDWARD P. PIERCE.
> JAMES B. CARROLL.
> CHARLES F. JENNEY.