SAMUEL SPECTOR *vs.* BUILDING INSPECTOR OF MILTON.

Suffolk. March 11, 12, 1924. — October 16, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, & CARROLL, JJ.

*Building Law,* Zoning by-law. *Constitutional Law,* Police power: municipal zoning. *Municipal Corporations,* By-laws and ordinances, Officers and agents. *Mandamus.*

A zoning by-law, adopted by unanimous vote at a special meeting of the town of Milton in 1922, created three districts. Two districts comprised

proportionately a very small part of the area of the town, upon which business structures were permitted, and as to the third district there was strict prohibition of the erection or alteration or use of any building for a store or shop or for manufacturing, industrial, trading or commercial purposes, or for any purpose except a dwelling for one or more families, a hotel, lodging or boarding house, a club, a church, school or academy, and certain other specified purposes and purposes accessory and incidental to those permitted purposes; excepting that the use of existing buildings being used at the time of the adoption of the zoning by-law for purposes otherwise forbidden in that district was permitted, and additions to or extensions and replacements of such buildings, after public hearing and determination by the selectmen as to the existence of certain facts, was to be permitted.   *Held*, that the provisions of the by-law did not exceed the power conferred by G. L. c. 40, §§ 25–30, were not unreasonable, and were in harmony with those statutory requirements.

The fact, that land, of a petitioner for a writ of mandamus to compel the building inspector of Milton to issue a building permit for the erection of stores in the area prohibited by the zoning by-law above described, could be used more profitably for commercial than for residential purposes, was *held* to be of slight significance and of no consequence in the broad aspects of the case.

The provision in the by-law above described, permitting the use in the residence district of existing buildings being used at the time of the adoption of the by-law for purposes otherwise forbidden in the residence district and permitting additions, alterations or enlargements upon cause shown, were *held* to be unobjectionable and not to make the by-law an unreasonable classification.

The fact, that an owner of land filed an application for a permit before the enactment of the zoning by-law above described, gave him no vested rights and provided no reason why the by-law should not be held applicable to him from and after the time when it became operative.

An owner of land in Milton filed a petition under existing laws for leave to construct a block of stores at a certain location.   The selectmen learned of the pending petition, directed the building inspector not to issue a permit, and determined to prevent the erection of the stores. Pursuant to that purpose, they delayed the petitioner by subterfuge and instituted proceedings for a special town meeting.   A special town meeting was held which was attended by an unusually large number of voters, and the zoning by-law above described, which placed the petitioner's land in a district where stores were not permitted, was adopted unanimously.   The petitioner then was notified and brought a petition for a writ of mandamus to compel the building inspector to issue to him the permit he sought.   There was nothing to show that the voters of the town in their action were not actuated solely by a consideration of the public welfare.   *Held*, that the disingenuous conduct of the respondent and of the selectmen in their relations with the petitioner, if and so far as it existed, could not stand in the way of the common good of all the people, as manifested by the vote at the town meeting whereby the zoning by-law was adopted.

In the record before this court upon a report of the petition for a writ of mandamus above described, there was nothing to show that the public officers of the town were actuated by unworthy motives or that they did not act throughout in the common welfare as they understood it, and *it was stated,* that, even if their conduct was improper, such misconduct by them as public officers in the performance of a public function could not prevent the proper operation of governmental authority when set in motion through appropriate channels, as was done in this case by the legally adopted vote of the special town meeting.

A writ of mandamus will not be ordered to compel a public officer to issue a permit which, at the time of the filing of the petition, it had become unlawful for him to issue of his own motion.

Upon the record before this court of the petition for a writ of mandamus above described, it appeared that the petitioner's original application filed with the respondent was for leave to erect a block of twelve stores, that the title to the land upon which he proposed to erect the stores was subject to restrictions which would permit him to erect only eleven stores, and that, upon his attention having been called to that fact, he submitted an informal plan which called for only eleven stores, but did not alter his petition; and *it was stated* that, while this case was determined on the grounds above set forth, this court would not order the issuance of a permit which the petitioner could not use because of the restrictions upon his title, and, moreover, that it appeared that the petitioner never had put himself in position to demand as of right a permit for a block of eleven stores because of his failure to comply with the building code in respect to filing with the respondent a petition and plans for such a block.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on December 5, 1922, and afterwards amended, seeking a writ of mandamus directing the building inspector of the town of Milton to issue to the petitioner a permit for building " as applied for by him on said June 21, 1922," such application being for permission to erect a block of twelve one-story stores for commercial purposes on Blue Hill Parkway, Brook Road, and Austin Street.

The petition was referred to an auditor and thereafter was heard by *Braley,* J. Material facts found by the auditor and by the single justice are described in the opinion. The single justice reported the case for determination by the full court.

G. L. c. 40, §§ 25-30, are quoted *ante,* pages 55–58.

*W. A. Fotch,* for the petitioner.

*L. Bryant & F. Rackemann,* (*K. D. Johnson* with them,) for the respondent.

RUGG, C.J.   This is a petition for a writ of mandamus to compel the respondent, the building inspector of Milton, to issue to the petitioner a building permit for the construction of a block of stores.

The petitioner on June 9, 1922, purchased land located in Milton for the purpose and with the intention of erecting thereon a one-story brick block of twelve stores.   This intent was communicated to the respondent.   At that time there was no zoning ordinance, so called, in Milton, but there was a building code.   According to its provisions, there must be submitted to the building inspector, before the erection of any building, a detailed description of the location, purpose and construction of the proposed structure and " full and complete copies of the plans of such proposed work, and such structural detailed drawings as the inspector may require."   The plans and detailed drawings must be submitted in duplicate, and, if approved, one set must be kept on file in the office of the building inspector.   The petitioner, on June 21, 1922, submitted an application for a permit with appropriate plans for a block of twelve stores. When suggestion was later made to the petitioner that a part of his land was subject to a building restriction, so that only eleven stores could be erected, he filed on June 29, 1922, a ground floor plan of his proposed building on a single sheet, showing eleven instead of twelve stores.   No full set of plans in duplicate was filed and no modification was made by the petitioner of his application for a permit changing the number of stores from twelve to eleven.   The petitioner's land was in truth subject to a private building restriction of public record.   Apparently with due observance of this restriction only eleven stores could be erected.

The building code provided that it was the duty of the inspector " to approve or reject any plans filed with him . . . within a reasonable time and within ten (10) days in any event, and no work shall be commenced until a permit is issued."   The respondent did not approve the plans or act on the application for permit or plans until after the adoption of the by-law hereinafter referred to, when he returned them to the petitioner without comment.

Immediately after the purchase by the petitioner and the knowledge by the selectmen of Milton of the petitioner's purpose to erect stores on his land, the selectmen of Milton determined to prevent the execution of such purpose. They directed the respondent not to issue any permit and to deliver to them any application and plans which might be filed by the petitioner. After his application and plans were filed with the respondent, the selectmen took and kept possession of them until after the adoption of the zoning by-law, to which reference will presently be made. They and the respondent, with the intention of delaying the petitioner until after the zoning by-law could be presented to a town meeting for adoption, suggested to him as a subterfuge the existence of the building restriction as preventing the permit for twelve stores. They did not tell him of the proposed zoning by-law until after it was adopted. The respondent, although knowing that he was not subject to the direction of the selectmen in the performance of his duties under the building code, nevertheless determined to obey them and not to issue a permit to the petitioner until ordered to do so by them. He did not issue any permit.

The selectmen, with the intent to forestall the granting of a permit to the petitioner, caused to be drafted a zoning by-law, dividing the territory of the town of Milton into three districts, designated A, B, C. Districts B and C cover territory comparatively small in area, and in fact devoted to business purposes. No restrictions were imposed on these districts. By far the larger part of the area of the town was comprehended in district A, including the land of the petitioner. Within that district there was strict prohibition of the erection or alteration or use of any building for a store or shop or for manufacturing, industrial, trading or commercial purposes, or for any purpose except a dwelling for one or more families, a hotel, lodging or boarding house, a club, a church, school or academy, and certain other specified purposes and purposes accessory and incidental to those permitted purposes. A further exception permitted the continuance of the use of existing buildings being used at the time of the adoption of the zoning by-law for purposes

otherwise forbidden in district A.   There was provision, also, for the issuance of permits for additions to or extensions and replacements of such buildings after public hearing and determination by the selectmen as to the existence of certain facts.

The zoning by-law was recommended by the unanimous report of the warrant committee of the town, adopted at a special town meeting, held pursuant to a legal warrant, copy of which was delivered at each house in the town and printed in a newspaper published in the town, approved by the Attorney General in accordance with the statute, delivered to the inhabitants as required by law, and went into effect, if valid, on July 11, 1922.   The town meeting, at which the zoning by-law was presented, was exceptionally large for Milton and the vote in favor of its adoption was unanimous.

No question is made by the petitioner but that there was compliance with all formalities prerequisite to the passage of the zoning by-law.   His contention is that the by-law itself is invalid and that he is entitled to a building permit notwithstanding its provisions.

The constitutional questions which have been argued are settled by *Inspector of Buildings of Lowell* v. *Stoklosa, ante,* 52, this day decided.   It there has been held that art. 60 of the Amendments to the Constitution of this Commonwealth, which expressly authorizes the General Court to limit buildings according to their use or construction to specified districts of cities and towns, is not in contravention of any guaranty of the Constitution of the United States.   It further has been there decided that G. L. c. 40, §§ 25–30, both inclusive, enacted pursuant to the authority of art. 60 of the Amendments, conform to the requirements of the Constitution of this Commonwealth and of the United States.   See *Opinion of the Justices,* 234 Mass. 597.

The zoning by-law of Milton here assailed does not in its provisions exceed the power conferred by the statute and is in harmony with its requirements.   The statute in express terms provides that, in the establishment of districts, buildings to be used for particular industries, trades, manufacturing or commercial purposes may be restricted to certain

areas and excluded from other parts of the municipality. The mandate of the statute is that the establishment of such districts shall be " in such manner as will best promote the health, safety, convenience and welfare of the inhabitants, will lessen the danger from fire, will tend to improve and beautify the city or town, will harmonize with its natural development," and that " Due regard shall be paid to the characteristics of the different parts of the city or town."

The special facts with respect to Milton in this connection are that it is a very old town of about ten thousand inhabitants. It is bounded on the north by Boston and on the south by the Metropolitan Park known as the Blue Hills Reservation. There is little about the town that bears a commercial, industrial or manufacturing aspect. The only business sections are East Milton and Milton Lower Mills, each very small in area and each on an extreme edge of the town, constituting respectively districts B and C. Two branches of the New York, New Haven and Hartford Railroad are on or near the boundaries of the town, one running to each of these business districts. Outside of the districts B and C, there are but fifteen buildings used for gainful or commercial purposes, a number insignificant compared with the number of homes. The town is extraordinarily residential in character, peculiarly free from industrial, manufacturing and commercial establishments. There are many fine residences on unusually well kept estates. The shade trees on streets and private lands are numerous and beautiful. Further facts are: " All the residences in the town are either one or two family houses. The streets and sidewalks of the town are large, wide and well built. Milton is the home of Milton Academy with its large spacious grounds and beautiful buildings devoted to the college preparatory education of young men. The town is exceptionally free from noise, smoke, dirt and dust. It presents generally the aspect of a town of extraordinary homes inhabited by people of culture and refinement."

The petitioner's land is in a part of Milton commonly called Mattapan, because within the section served by the Mattapan post office in the Mattapan section of Boston.

The finding of the auditor is that the Mattapan neighborhood in Milton and the particular square on which the petitioner's land is located constitute an established residential section and not a commercial or business section, and that " the erection of commercial structures therein would make the square and its environs less desirable for homes." This finding must stand. It is amply supported by the subsidiary facts which are reported but which need not be narrated.

The circumstance that the land of the petitioner could be used more profitably for commercial than for residential purposes is of slight significance and of no consequence in the broad aspects of the case. Every exercise of the police power in respect to the use of land is likely to affect adversely the property interests of somebody. That caused to the petitioner by the zoning by-law is far less in degree than in *Fischer* v. *St. Louis*, 194 U. S. 361, *California Reduction Co.* v. *Sanitary Reduction Works*, 199 U. S. 306, *Reinman* v. *Little Rock*, 237 U. S. 171, *Hadacheck* v. *Los Angeles*, 239 U. S. 394. See cases reviewed in *Opinion of the Justices*, 234 Mass. 597 at pages 608, 609, 610. The establishment of a strictly residential district, free from commercial or manufacturing business, may be thought to conserve the general health, safety and good order of the community. It cannot rightly be pronounced unreasonable.

The limits of the several districts established by the zoning by-law appear to us plainly to be reasonable and not open to any well grounded objection. *Inspector of Buildings of Lowell* v. *Stoklosa, ante,* 52.

There is nothing about the zoning by-law which denies to the petitioner the equal protection of the laws. The provision exempting from its prohibition of business or commercial uses existing buildings in district A and permitting additions, alterations or enlargements upon cause shown, are unobjectionable. A classification of this nature does not deny the equal protection of the laws. It is based upon sound distinctions. To exempt buildings already devoted to a use from a prohibition of such use of other buildings or buildings thereafter erected in a specified area is not unequal

but lawful. *Commonwealth* v. *Alger*, 7 Cush. 53, 103. To permit alterations, enlargement, or replacement of such buildings stands on the same footing as the initial classification. *Quong Wing* v. *Kirkendall*, 223 U. S. 59. *Welch* v. *Swasey*, 193 Mass. 364, affirmed in 214 U. S. 91. *Ayer* v. *Commissioners on Height of Buildings in Boston*, 242 Mass. 30, 32. Cases like *Goldstein* v. *Conners*, 212 Mass. 57, and *Kilgour* v. *Gratto*, 224 Mass. 78, are distinguishable. The governing statutes did not authorize the acts of municipal officers under examination in those cases.

The fact that the petitioner filed his application for a permit before the zoning by-law was enacted is no reason why the by-law should not be held applicable to him from and after it became operative. The petitioner held his property subject at all times to every valid exercise of the police power. The filing of his application gave him no vested rights. *Salem* v. *Maynes*, 123 Mass. 372. *Cherry* v. *Isbister*, 201 App. Div. (N. Y.) 856, affirmed in 234 N. Y. 607. *Des Moines* v. *Manhattan Oil Co.* 193 Iowa, 1096, 1102. *Ware* v. *Wichita*, 113 Kans. 153.

There is nothing in the record to indicate that the legal voters of Milton in voting unanimously for the zoning by-law were not actuated wholly by a consideration of the public welfare. It was their vote alone which gave life to the zoning by-law. The disingenuous conduct of the respondent or of the selectmen in their relations with the petitioner, if and so far as it existed, cannot stand in the way of the common good of all the people, as manifested by the vote at the town meeting whereby the zoning by-law was adopted. Misconduct of a public officer in the performance of a public function cannot prevent the proper operation of governmental authority when set in motion through appropriate channels. Moreover, there is nothing in the record to show that the public officers of the town were actuated by unworthy motives or did not act throughout in the common welfare as they understood it. The situation in the case at bar falls considerably short of the principle stated in *Attorney General* v. *Williams*, 178 Mass. 330, at page 335, with respect to a statute, in these words: " If it can be given

a reasonable construction which will sustain it as constitutional, it would be our duty so to construe it, even if it appeared that in the endeavors which suggested the legislation, considerations were presented to the Legislature which would not be a sufficient constitutional justification for such an enactment." *Worcester Board of Health* v. *Tupper,* 210 Mass. 378. *Donovan* v. *Apportionment Commissioners,* 225 Mass. 55, 58. *Soon Hing* v. *Crowley,* 113 U. S. 703, 710. *United States* v. *Des Moines Navigation & Railway Co.* 142 U. S. 510, 544.

The petitioner could not construct his buildings without a permit from the respondent. He never has received such permit. Long before this petition was filed, it became unlawful for the respondent to issue such a permit by reason of the zoning by-law. The court would not compel a public officer by a peremptory writ of mandamus to issue a permit which at the time of the filing of the petition it was unlawful for him to issue of his own motion.

The case has been discussed and considered in its broad aspects. There is another ground which also stands in the way of the petitioner. The title of the petitioner to his land was subject to a recorded private restriction which prevented him, having regard to its terms, from erecting the block of twelve stores. His petition and plans filed with the respondent, as a necessary prerequisite to the issuance of a permit under the building code, showed a block of twelve stores. The petitioner did not file plans for a block of eleven stores as required by the building code. Whatever may have been the beliefs or motives of either the petitioner or the respondent on the subject, we should not issue a peremptory mandate to compel the respondent to issue a permit for twelve stores, which the plaintiff could not use if he observed the legal limitations of his own title. The petitioner never put himself in position to demand as of right a permit for a block of eleven stores because of failure to comply with the building code in respect to filing with the respondent plans for such a block.

*Petition dismissed.*