## LOMBARDO v. CITY OF DALLAS et al.
### No. 11163.

Court of Civil Appeals of Texas. Dallas.
Feb. 20, 1932.

Rehearing Denied March 19, 1932.

W. S. Bramlett, J. T. Kelly, and Angelo Piranio, all of Dallas, for plaintiff in error.

Hugh S. Grady, Jas. J. Collins, A. A. Long, W. Hughes Knight, and H. P. Kucera, all of Dallas, for defendants in error.

LOONEY, J.

V. A. Lombardo owned a lot located within the bounds of a dwelling district established by ordinance adopted by the city of Dallas in pursuance of authority granted cities and incorporated villages by an act of the Fortieth Legislature (chapter 283 [Vernon's Ann. Civ. St. arts. 1011a–11011j]), known as "the City Zoning Law," and made formal application to the building inspector of the city, for permission to erect a building on the lot, to be used as a gasoline filling and oil station. The inspector denied the application on the ground that the zoning ordinance prohibited such use in a dwelling district, and on appeal the board of adjustment affirmed the action of the inspector, holding that, the zoning ordinance forbidding such use in a residential district, they (the board) had no jurisdiction of the subject-matter of the appeal.

In due time Lombardo presented to the court below his petition, in which the city of Dallas, its mayor, members of its legislative body, the building inspector, members of the board of adjustment, and the secretary of said board were named as defendants, setting up the grounds on which he now insists that the decision refusing him a permit was illegal, and by appropriate allegation, in addition to the statutory relief sought by cer-

tiorari, asserted the invalidity of both the act of the Fortieth Legislature, "the City Zoning Law," and the zoning ordinance adopted thereunder; his contention being in effect that these measures conflict with both the State and Federal Constitutions, in that they authorize the taking, damaging, and destroying of property, deny equal protection of the law, and, as applied to him and his property, violate familiar constitutional safeguards, in being capricious, arbitrary, unjustly discriminatory, and unreasonable.

Plaintiff sought relief as follows: That defendants be enjoined from interfering with him in the erection of the proposed building on his lot and its use as a gasoline filling station; or, in the alternative, that the writ of mandamus issue compelling proper officers of said city to issue, or cause to be issued, to him, a permit for the erection of the building for the use above mentioned; but, if the court should be of opinion that a writ of certiorari ought to issue, that, upon hearing thereunder, the action of the building inspector and the board of adjustment be reversed, and that the permit sought be ordered issued.

On being presented the petition, the court directed that the defendants be notified to show cause why the injunctive relief should not be granted; also directed the issuance of a writ of certiorari requiring the board of adjustment to make return thereon, as required by the statute, which was duly issued, served, and return thereon made by the board, showing that its decision, affirming the action of the building inspector, was based upon reasons hereinbefore stated.

Defendants answered by general denials and special pleas justifying the action of the officials in refusing to issue plaintiff the permit sought (and other acts called in question) under the provisions of the "City Zoning Law" of the state and the ordinance of the city, the contention of defendants being that both are constitutional enactments, and, as applied to plaintiff and his property, are neither capricious, arbitrary, unjustly discriminatory, nor unreasonable, but valid and enforceable.

▮ The court denied request of each party for an instructed verdict, and directed that, if the jury should answer the first issue submitted in the negative, no other issue need be answered; and the jury having so answered, which was simply to the effect that the building inspector had not unconditionally refused plaintiff's application for a building permit, and, as plaintiff made no request for the submission of any other issue, all other fact issues will be deemed to have been found by the court in such manner as to support the judgment rendered (article 2190, R. S. 1925) which was to the effect that plaintiff take nothing, from which he appealed.

▮ Plaintiff opens the discussion by contending that the court erroneously submitted issue No. 1 because the evidence was uncontradicted that the issuance of a building permit to him was unconditionally refused by the inspector. This contention is, in our opinion well taken, but the error complained of is immaterial and harmless. The record discloses that the building inspector refused plaintiff the permit, because, under the zoning ordinance, his property was within the bounds of a dwelling district and its use as a gasoline filling and oilstation was forbidden. The refusal of the inspector to issue the permit was absolute and unconditional, and the action of the board of adjustment affirming this action was also absolute and unconditional. We think these officials were without discretion in the premises and could not have done otherwise, as neither had authority, under the Zoning Law, to make an exception in favor of plaintiff's property; the legislative body of the city alone possessed such authority. In view of this holding, plaintiff's related assignments complaining of the action of the court in excluding certain evidence are also overruled.

The material questions presented on appeal will now be considered.

Appellant contends that the "City Zoning Law," enacted by the Fortieth Legislature, and the zoning ordinance of the city of Dallas adopted thereunder, are, in general scope, unconstitutional and void because in conflict with familiar provisions of both State and Federal Constitutions, in that they authorized the taking, damaging, and destroying of property, and deny equal protection of the law.

In Scott v. Champion Building Company, 28 S.W.(2d) 178, 184, we sustained the validity of this ordinance against similar contentions and refer to the report of that case for description of the ordinance involved, and for full citation of authorities sustaining the validity of comprehensive zoning ordinances, such as the one under consideration. As illustrative of the growing public demand and justification for the enactment of zoning laws, the language employed by Circuit Judge Kenyon, in American, etc., Co. v. City of Minneapolis, 35 F.(2d) 657, 660, is pertinent; he said: "Was the zoning ordinance such an unreasonable and arbitrary exercise of the police power that it deprived appellants of their property without due process of law, and denied to them the equal protection of the law? There is little remaining to be said as to the law, in view of the numerous decisions of the Supreme Court dealing with every phase of the question. The law is clear —its applicability to various circumstances and to situations brought about by the complexity of our civilization is ofttimes difficult. The general tendency of the courts is to uphold reasonable zoning ordinances that

have a substantial relationship to the protection of public safety, health, morals, or general welfare. They are a matter of comparatively recent growth, made necessary by the tremendous industrial and business development of the country. The people of cities are entitled to some protection for their homes against the continual aggressions of business and from the conglomeration of nerve-destroying noises incidental to industrial development; hence residential districts are established where people may have a reasonably quiet home life. The governing bodies clothed with authority to determine residential and industrial districts in cities are better qualified because of their knowledge of the situation to act upon these matters than are the courts, and they should not be interfered with in the exercise of their police power to accomplish the desired end, unless under the guise of police power there is a plain violation of the constitutional rights of citizens." Other recent cases sustaining zoning regulations in general scope are Koch v. City of Toledo (C. C. A.) 37 F. (2d) 336; Jones v. City of Los Angeles, 211 Cal. 304, 295 P. 14; City of Lincoln v. Logan, 120 Neb. 827, 235 N. W. 583; City of La Crosse v. Elbertson (Wis.) 237 N. W. 99; State ex rel. v. City of New Orleans (La. Sup.) 132 So. 786.

That the subject of zoning is growing perceptibly in judicial favor is evidenced by the fact that courts in a number of states reversing former holdings now espouse the doctrine that these laws, in general scope, are valid, and their enactment authorized, in the proper exercise of the police power. See Euclid v. Ambler, 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1027; State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1015; State ex rel. v. Christopher, 317 Mo. 1179, 298 S. W. 720; Howden v. Mayor, 172 Ga. 833, 159 S. E. 401.

While the power of states and cities, acting under state authority, to enact zoning regulations is now generally recognized, doors are left open in all such enactments for the contention to be made that the regulations prescribed, as applied to a particular situation, are unreasonable, arbitrary, or discriminatory; and under this head plaintiff insists that the provisions of these zoning regulations, when applied to him and his property, are in a number of respects invalid and should not be enforced. We will now notice these contentions, and in the discussion will assume that all issues of fact, if material issues of fact are involved, were found by the trial court in such manner as to support the judgment rendered.

One contention made is that, because the ordinance permits others to use their properties, as plaintiff desires to use his, surrounded, conditioned, and circumstanced as is his property, that the refusal to grant him the

building permit was a denial of equal protection of the law.

This contention seems to be largely, if not exclusively, based upon provisions of the ordinance in regard to nonconforming uses, that is, uses of property in existence at the passage of the ordinance that are not in harmony with its regulations, also upon certain subsequent changes in classifications of lots and areas authorized by the legislative body of the city; however, it does not appear that the nonconforming uses involved at this point or the change in classifications here referred to involve any property located in the immediate neighborhood of plaintiff's. The ordinance divides the city into six classes of use districts, that is, dwelling, apartment, local retail, commercial, first manufacturing, and second manufacturing districts; in each, except the first two named, that is, dwelling and apartment, buildings and premises may be used for gasoline filling station, subject to regulations applicable to the particular area district in which the same may be located. The uses being made of property at the time of the passage of the ordinance were not disturbed, but provision was made that all such would be continued under certain regulations. The "City Zoning Law" of the state, authorized the legislative body of a city, from time to time, to amend, supplement, change, modify, or repeal any regulation or restriction. The authorities are unanimous in holding that courts will presume that the legislative body, in enacting ordinances, acted within their authority, and the burden rests upon those who challenge their validity to show that, in the matter called in question, the action of the municipal authorities was arbitrary, unreasonable, and without substantial relation to the public safety, health, morals, or the general welfare. We find nothing in either or all of these matters to justify the conclusion that plaintiff or his property was subjected to any discrimination, or that he was denied the equal protection of law.

Closely allied to the proposition just discussed, plaintiff contends that property in the immediate neighborhood of his lot was permitted, under the zoning ordinance, to be used for business purposes similar to the use plaintiff desired to make of his property; hence the refusal to grant him the permit desired denied equal protection of the law.

This contention is based upon the fact that, immediately across the street from the property belonging to plaintiff, there was at the time of trial a small retail store where ice, dairy products, and groceries were sold. This business had been established and was in operation prior to the enactment of the zoning ordinance. While it is obvious that, under the provision of the ordinance, as an original question, such a use of property in a dwell-

ing district was forbidden, yet it is also obvious that as a nonconforming use it could not be forbidden absolutely, but only regulated. Zoning ordinances would be of no practical value if legislative bodies enacting them could not create use districts and make provision respecting the rights of nonconforming uses, for it is inevitable that in zoning a city nonconforming uses will be encountered here and there; hence, if the toleration of existing uses constitutes a discrimination against others owning property in the particular district, as contended by plaintiff, effective zoning would be out of the question. A similar question arose in State v. Harrison, 164 La. 564, 114 So. 159, 161; and in disposing of same the Supreme Court of Louisiana used language that is a complete answer to plaintiff's contention here. The court said: "In our opinion this attack upon the constitutionality of the ordinance is not well founded. The exception in favor of existing buildings and the existing use of them is not unjustly discriminatory. To except these buildings and the continued use of them from the ban of the ordinance is reasonable. The council had a right, in adopting the ordinance, to place such buildings and their use in a class by themselves, and except them, including the use to which they were then being put, from the prohibition of the ordinance. The council had the right to do this in order to avoid making the ordinance unnecessarily harsh and burdensome. The council, in so doing, was denying to no one the equal protection of the laws, for the ordinance, based upon a classification, which is not arbitrary, but which appears to be sound and just, applies alike to all similarly situated." The court cited Spector v. Building Inspector, 250 Mass. 63, 145 N. E. 265, and Aurora v. Burnes, 319 Ill. 84, 149 N. E. 784. To the same effect see City of La Crosse v. Elbertson (Wis.) 237 N. W. 99.

The uses made of property in the immediate neighborhood of plaintiff's property, with the exception of the small retail business mentioned above, are for dwellings, and the operation of a gasoline station in such a neighborhood would in our opinion be fraught with objectionable features not usually incident to the operation of an ordinary mercantile establishment. Hazards due to the inflammable nature of petroleum products handled in such places, the danger to pedestrians of being struck by cars of customers driven in and out over adjacent sidewalks, together with the usual noises and odors that pertain to such business, give to the gasoline filling station a classification all to itself. As was said by this court in Scott v. Champion, 28 S.W.(2d) 178, pages 180, 181: "Courts judicially know that gasoline and other inflammable petroleum products are explosive and constantly menace the safety of persons and property, wherever stored or kept for sale.

While it cannot be correctly said that a gasoline station is a nuisance per se, yet, when erected and maintained at a place prohibited by a reasonable regulatory ordinance, it may be properly considered a nuisance, by reason of its prohibited location, and dealt with accordingly. See City of Wichita Falls v. Continental Oil Co. (Tex. Civ. App.) 5 S.W.(2d) 561; City of San Antonio v. Robert Thompson (Tex. Civ. App.) 23 S.W.(2d) 796; Pierce Oil Corp. v. City of Hope, 127 Ark. 38, 191 S. W. 405, Ann. Cas. 1918E, 143, affirmed on writ of error by the United States Supreme Court, 248 U. S. 498, 39 S. Ct. 172, 63 L. Ed. 381; Morgan v. Board of Com'rs, 104 N. J. Law, 13, 139 A. 718; State ex rel. v. Stark, 96 W. Va. 176, 122 S. E. 533; Standard Oil Co. v. City of Danville, 199 Ill. 50, 64 N. E. 1110; In re McIntosh, 211 N. Y. 265, 105 N. E. 414, L. R. A. 1915D, 603." To the same effect see Priscell v. City of Orange, 136 A. 803, 5 N. J. Misc. R. 434; Greenwich Gas Co. v. Tuthill, 113 Conn. 684, 155 A. 850.

Plaintiff contends further that both the legislative act and the ordinance as applied to him and his property are void, in that, they authorize the taking, damaging, and destroying of his property and deny due process of law in violation of well-known provisions of both State and Federal Constitutions. The following facts are germane to this contention: Plaintiff testified that, if granted a permit to erect a gasoline filling station on the lot in question, he intended to expend in the installation of same from ten to fifteen thousand dollars. Mr. T. W. Scollard, witness for plaintiff (pecuniarily interested in plaintiff's application for permit) expressed the opinion that plaintiff's property had a fair market value of $50 per front foot (on Lemmon avenue) for the uses permitted under the zoning ordinance, and, if the permit for a gasoline station were secured, the property would have a fair market value of from $200 to $225 per front foot; that the reasonable income from a two-family dwelling, permitted under the ordinance, would be about $1,500 per annum, and the reasonable income from such a filling station as plaintiff contemplated erecting would be $3,000. There was further opinion evidence, to the effect that the classification of plaintiff's property was reasonable, also that the erection and maintenance of the filling station on plaintiff's property would affect, adversely, the value of surrounding property for residential purposes; also there were other facts and circumstances bearing upon the reasonableness, whether or not of the classification of plaintiff's property in evidence.

The court below was justified in resolving the facts against the contention of plaintiff, for whether considered a question of law, or one of fact, or as a mixed question of law and fact, we think the court was correct in resolv-

ing the question against the contention of plaintiff.

█ It is not an effective argument against a zoning ordinance, otherwise valid, that it limits the use and depreciates the value of property, as the public health, safety, morals, and the general welfare are superior in importance to the pecuniary profits of the individual owner. The particular provision of the ordinance attacked must itself be clearly arbitrary, unreasonable and without any substantial relation to the public health, safety, morals, or general welfare, before it could be held unconstitutional and void. This doctrine seems to be thoroughly well established. See Appeal of Kerr, 294 Pa. 246, 144 A. 81, 83 and authorities cited; Heffernan v. Zoning Board, 50 R. I. 26, 144 A. 674, 675; Wulfshon v. Burden, 241 N. Y. 288, 150 N. E. 120, 43 A. L. R. 660; Spector v. Building Inspector, 250 Mass. 63, 145 N. E. 265, 267; Euclid v. Ambler, 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1026; Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927; Neithamer v. Heyer, 39 Ohio App. 532, 177 N. E. 925.

Appellant also contends that the ordinance, as applied to his property, is void because the Legislature only delegated to local legislative bodies power to regulate and not to prohibit such a use as plaintiff proposed to make of his property.

The caption of the "City Zoning Law" (chapter 283, Acts of the Regular Session 40th Legislature) reads in part as follows: "An Act enabling cities and incorporated villages to pass zoning regulations, granting full power to said cities and incorporated villages, providing for the creation of districts," etc. The powers granted, are enumerated in section 1 of the act (Vernon's Ann. Civ. St. art. 1011a) as follows: "Section 1. Grant of Power.—For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of cities and incorporated villages is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes."

██ Thus it appears that full authority was delegated cities and incorporated villages to restrict the use of buildings, structures and land for trade, industry, residence, or other purposes. Zoning, in general, is the division of a city or area into districts, and the prescription and application of different regulations in each district; generally, such division is into two classes of districts, such as was attempted by the ordinance under consideration. Effective zoning regulations, as that term is now well understood, comprehends, necessarily, prohibitions and restrictions; prohibitions against certain uses in named districts, and restrictions as to the area of lots to be built upon, the size and height of structures, yard spaces to be left unoccupied, etc. In Miller v. Board of Public Works, 195 Cal. 477, 234 P. 381, 384, 38 A. L. R. 1479, the Supreme Court of California gave this definition of zoning: "In its original and primary sense, zoning is simply the division of a city into districts and the prescription and application of different regulations in each district. Roughly stated, these regulations, which may be called 'zoning regulations,' are divided into two classes: (1) Those which regulate the height or bulk of buildings within certain designated districts, in other words, those regulations which have to do with structural and architectural designs of the buildings; and (2) those which prescribe the use to which buildings within certain designated districts may be put." In Spencer v. City of Memphis, 155 Tenn. 70, 290 S. W. 608, 610, 611, the Supreme Court of Tennessee had before it a similar question, that is to say, the objection was made there, the same as made here, that the power to enact zoning regulations did not carry the power to prohibit uses of property within certain districts. The court denied this contention in the following language: "The caption of the act indicates that the use regulations authorized by the act are to be included in general ordinances dividing the land within the city into districts or 'zones,' and that the regulations are to be applied to the land 'within such zones or districts.' The clear implication of the caption is, we think, that the regulations to be authorized may permit land in one zone or district to be put to uses denied for land in another district of the city. It is difficult to perceive how the use of the land included within a district may be regulated without provisions excluding certain uses for specified purposes. We think a provision that the land within a specified district of a city may be used only for residence purposes, or for limited commercial or industrial purposes, is a regulation of the use of the land within the district and not a prohibition of its use. Palmer v. Express Co., 129 Tenn. 116, 157, 165 S. W. 236; Mayor, etc., of Nashville v. Linck, 12 Lea (80 Tenn.) 499."

█ We hold, therefore, that the legislative act and the ordinance of the city of Dallas, called in question, and the provisions of same as applied to plaintiff and his property, are not subject to the objections urged by plaintiff, but that they are valid and enforcible; therefore all assignments are overruled, and the judgment below is affirmed.

█ Plaintiff, in our opinion, must seek relief from the matters and things of which he complains, from the legislative body of the

city of Dallas, as it seems that body, under existing law, alone has power to change boundaries of zoning districts already established, and amend, supplement, modify, or repeal regulations heretofore prescribed.

Affirmed.

### On Motion for Rehearing.

The motion of plaintiff in error for rehearing presents nothing new, and, seeing no reason to change or alter our original decision, the motion is overruled.

Plaintiff in error also presents what is styled "Motion for additional findings," but in reality is a request that the court find the legal effect of certain enumerated facts, the language beginning each of the six paragraphs in the request being for the court to say that "the evidence established as a matter of law that, etc." Besides, the motion fails to specify the point upon which there is no finding of fact, or upon which the finding made is insufficient; therefore the request is denied.