## In re: Appeal of E. J. White.

*Municipalities—Zoning ordinance—Building restrictions—Police power—Unlawful exercise.*

On an appeal from a decision of the Board of Appeals under a Zoning Ordinance of the City of Pittsburgh, it appeared that the defendant had enclosed in glass a porch already erected. The provisions of the ordinance which it is claimed were violated are as follows: "When the front wall of eighty (80) per cent of all the buildings on one side of a street between two (2) intersecting streets have been kept back from the street line, no building hereafter erected or altered, shall be placed nearer to the street line than the distance established by the majority of the eighty (80) per cent at the time of the passage of this ordinance."

The construction of the porch had been begun prior to the passage of the ordinance, the defendants did not know that a building permit was necessary though required by another ordinance. Upon discovering this mistake they applied for the permit which was refused and the glass enclosure was ordered to be removed. This order was an unlawful exercise of the police power and will be reversed.

The statute and ordinance, while conferring the power on some property holders to virtually control and dispose of the property rights of others, create no standard by which the power thus given is to be exercised. The property holders who desire and have the authority to establish the line could do so solely for their own interest or even capriciously. Such delegation of authority cannot be sustained as a lawful exercise of the police power.

Argued April 17, 1925. Appeal No. 40, April T., 1925, by E. J. White and Alice R. White, from decree of C. P. Allegheny County, April T., 1924, No. 2714, in the case of In Re: Appeal of E. J. White and Alice R. White, his wife, from the decision of the Board of Appeals under the Zoning Ordinance of the City of

Pittsburgh.     Before HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Reversed.

Appeal from the decision of the Board of Appeals under the Zoning Ordinance of the City of Pittsburgh. Before SHAFER, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the appeal.   Petitioners appealed.

*Error assigned* among others, was the decree of the court.

*Frank C. McGirr,* for appellant.—Section 32 of the Zoning Ordinance is unconstitutional: Eubank v. City of Richmond, 266 U. S. 137; St. Louis v. Hill, 116 Mo. 527; People ex rel. Dilzer v. Calder, 89 App. Div. 503, 85 N. Y. Supp. 1015; 2 Dillon on Municipal Corporations, Sec. 695; Bryan v. City of Chester, 212 Pa. 259; Noble State Bank v. Haskell, 219 U. S. 111; Byrne v. Maryland Realty Co., 98 Atl. 547.

Police power cannot be exercised for esthetic purposes:   Haller Sign Works v. Physical Culture Training School, 249 Ill. 436.

Cases against Zoning Ordinances:   Penrose Investment Co. v. McKelvey, 256 S. W. Rep. 474;   People v. Chicago, 261 Ill. 16.

*Thomas M. Benner,* First Assistant City Solicitor, and with him *Richard W. Martin,* City Solicitor, and *H. Stewart Dunn,* Assistant City Solicitor, for appellees.—The Zoning Ordinance is valid:   Hadacheck v. Sebastian, 239 U. S. 394; Cusack v. Chicago, 242 U. S. 526; Lincoln Trust Company v. Williams Building Corporation, 229 N. Y. 313; Ware v. City of Wichita, 214 Pac. 99; City of Des Moines v. Manhattan Oil Co.,

184 N. W. 823; Bacon v. Walker, 204 U. S. 317; Munn
v. Illinois, 94 U. S. 113.

OPINION BY LINN, J., July 9, 1925:

Appellants enclosed, largely with glass, an open porch
at the front of their house, converting it into a room.  In
doing so, they disregarded a zoning ordinance of the City
of Pittsburgh, approved August 9, 1923, enacted pursu-
ant to the Acts of June 21, 1919, P. L. 570, the Act of
May 11, 1921, P. L. 503, and the Act of May 1, 1923, P.
L. 122.  They began work in July shortly before the ordi-
nance was passed, but failed to apply for a building per-
mit said to have been required at that time by another
ordinance, and had almost completed the improvement
when the city authorities discovered it and stopped them.
Appellant's attention having been called to the omission,
they applied to the bureau of building inspection for a
permit in December, 1923, but their application was re-
fused; notwithstanding that, they completed the work.
From the refusal of the bureau, they appealed to the
board of appeals provided for by the Act of May 1, 1923,
(supra).  The board also refused the permit, and in-
structed the superintendent of the bureau of building
inspection to take steps "to bring about the removal of
the illegal structure."  Appellants then appealed to the
common pleas, pursuant to sections 5, etc. of the Act of
May 1, 1923, (supra) ; after hearing, the appeal was dis-
missed, on the ground that appellant's structure vio-
lated section 32 of the zoning ordinance.

The pertinent part of section 32 is as follows: "First
area district.  In this district the minimum dimensions
of yards and other open spaces, and the area of lot re-
quired per family housed thereon, shall be as follows:
Front yard: (a) There shall be a front yard having a
depth of not less than fifteen (15) feet.

"(b) When the front wall of eighty (80) per cent of
all the buildings on one side of a street between two (2)
intersecting streets have been kept back from the street

line, no building hereafter erected or altered, shall be placed nearer to the street line than the distance established by the majority of the eighty (80) per cent at the time of the passage of this ordinance; provided that this regulation shall not be so interpreted as to reduce the buildable width of a corner lot facing on an intersecting street, of record at the time of the passage of this ordinance, to less than twenty-five (25) feet.

"(c) . . . . . ."

The house is on Evaline Street between Harriet Street and Friendship Avenue; in the same square and fronting on the same side of the street, are 29 houses (15 single and 7 double houses); an additional house in the square fronts on Friendship Avenue and this house is built 2.2 feet from the street line of Evaline Street; 4 houses are built back from 22 to 25 feet; the others are built back about 40 feet. All except the corner house fronting on Friendship Avenue, have open front porches varying in width from about 7 to 10 feet, extending toward the street that distance.

Appellants' alteration is thus described by the court below: they raised "the floor of it to the same level as the first floor of the house, putting in a solid wooden balustrade about the height of the porch railing, around the porch, and above this constructing windows on hinges so that they can be opened and closed, and also changed a window which looked out upon the porch, into a door, so that now there are two doors opening on the porch, and this structure, after its completion, was provided with a portable stove for heating, a rug, a billiard table and some furniture." Concerning that alteration, the court said: "An examination of the testimony and exhibits shows clearly that the board was right in holding that section 32 of the zoning ordinance forbids the placing of a building where this porch is situated. If therefore the enclosed porch as constructed has been turned into a part of the house, as distinct from a porch, its construction is forbidden by the ordinance."

506      In re: APPEAL OF E. J. WHITE.

Appellants' principal contention is that section 32 (b) so construed is unconstitutional as depriving them of property without just compensation. They make no claim that the statutes authorizing the enactment of the zoning ordinance are unconstitutional but expressly limit their condemnation to part of section 32; we therefore leave the question of constitutionality of the statutes until it is raised and limit our discussion to the point specified, likewise passing the effect of their having begun work before the enactment of the ordinance.

The ordinance purports to zone the entire city,—built-up as well as unbuilt. Section 32 (b) establishes a building line on streets wholly or partially built up. Consideration of the section will disclose that the line may be further back from the street line on one side of the street than on the other, and even on the same side of the street its distance from the street line may vary in different squares, its location depending wholly on how far back (if at all) a house or houses had already been built,—and if but one house had been built, its line would seem to control all the other lot owners. If no house has been built, 32 (a) would seem to require all builders to recede at least fifteen feet.

The city has not exercised its power of eminent domain, and taken appellants' property between the street line and the house line on making compensation therefor: (as to which see generally Phila. v. Wall, 184 Pa. 557; Bornot v. Bonschur, 202 Pa. 463; Insurance Company's App., 9 Pa. Superior Ct. 593). On the contrary, the city contends that it has exercised the police power delegated by statute,—has legislated, as its brief states, "for public welfare, safety and health, and generally the public benefit." Such legislation "must have some fair tendency to accomplish or aid in the accomplishment of some purpose for which the legislature may use the power": Welch v. Swasey, 214 U. S. 91, 105. We then inquire how anyone of the specified purposes is promoted by prohibiting appellants or others so situated,

from building on the forty feet of their land lying between their house and the street. We find no answer to the question in the city's brief. It has been held that building to a height disproportionate to the width of a street, may substantially exclude light, affect the quality and circulation of the air, and in case of fire or other calamity, injuriously affect the safety of the public: Welch v. Swasey, (supra) ; the erection of wooden buildings within specified areas may be prohibited: Klingler v. Bickel, 117 Pa. 326; cases are familiar holding that certain occupations may be prohibited in certain circumstances: a livery stable,—Reinman v. Little Rock, 237 U. S. 171; making bricks,—Hadacheck v. Los Angeles, 239 U. S. 394; buying scrap metal from minors,—Com. v. Harrison, 123 Pa. 508; individuals insuring against fire,—Com. v. Vrooman, 164 Pa. 306; casting advertisements and handbills into vestibules or yards,—Phila. v. Brabender, 201 Pa. 574; publicly exhibiting motion pictures without approval of the state board of censors,—Film Corp. v. Breitinger, 250 Pa. 225; acts regulating employment of women and children and fixing maximum hours of labor are familiar. In all these cases the regulation promoted the public welfare, or safety, or health, within the limits of the police power. But such effect is wanting here; section 32 (b) promotes none of these. Why should appellants not build as near the street line as the lot owner at the corner of Friendship Avenue? why not exercise the right enjoyed by those on the opposite side of the street, who, we were told at the argument, had built to the street line? In Mahon v. Coal Co., 274 Pa. 489, the Chief Justice said: "Of course, the cure must always bear a substantial relation to the existing evil, and must not constitute a mere attack on property rights, disguised as an exercise of the police powers." In considering the same case (260 U. S. 393, at 415,) Mr. Justice Holmes said: "The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recog-

nized as a taking......  We are in danger of forgetting
that a strong public desire to improve the public condi-
tion is not enough to warrant achieving the desire by a
shorter cut than the constitutional way of paying for the
change.  As we already have said, this is a question of
degree—and therefore cannot be disposed of by general
propositions."

In view of the haphazard results of the arbitrary mu-
nicipal action expressed in the ordinance, it is helpful to
consider what was said by the Supreme Court of a situa-
tion having essential elements in common with this, (in
Eubank v. Richmond, 226 U. S. 137) where the police
power was also put forward to justify an ordinance re-
quiring the authorities to establish building lines on
separate squares, not less than 5 nor more than 30 feet
back of public streets and across private property at the
request of the owners of two-thirds of the property abut-
ting on a street.  The court said: "It leaves no discre-
tion in the committee on streets as to whether the street
line shall or shall not be established in a given case.  The
action of the committee is determined by two-thirds of
the property owners.  In other words, part of the prop-
erty owners fronting on the block determine the extent of
use that other owners shall make of their lots, and
against the restriction they are impotent.  This we em-
phasize.  One set of owners determine not only the ex-
tent of use but the kind of use which another set of
owners may make of their property.  In what way is the
public safety, convenience, or welfare served by confer-
ring such power?  The statute and ordinance, while con-
ferring the power on some property holders to virtually
control and dispose of the proper rights of others, creates
no standard by which the power thus given is to be exer-
cised; in other words, the property holders who desire
and have the authority to establish the line may do so
solely for their own interest or even capriciously.  Taste
(for even so arbitrary a thing as taste may control) or
judgment may vary in localities, indeed in the same lo-

cality. There may be one taste or judgment of comfort or convenience on one side of a street and a different one on the other. There may be diversity in other blocks; and viewing them in succession, their building lines may be continuous or staggering (to adopt a word of the mechanical arts) as the interests of certain of the property owners may prompt against the interest of others. The only discretion, we have seen, which exists in the street committee, or in the committee of public safety, is in the location of the line between five and thirty feet. It is hard to understand how public comfort or convenience, much less public health, can be promoted by a line which may be so variously disposed": 226 U. S. 143.

Section 32 (b) cannot be sustained as a lawful exercise of the police power in the circumstances disclosed in this record.

The judgment is reversed.