## Junge's Appeal. (No. 2.)

*Municipalities—Zoning ordinance—Act of June 21, 1919, P. L. 570—Act of May 11, 1921, P. L. 503—Act of May 1, 1923, P. L. 122— Constitutionality.*

The Act of June 21, 1919, P. L. 570, as amended by the Acts of May 11, 1921, P. L. 503 and May 1, 1923, P. L. 122, is constitutional, insofar as it confers upon cities of the second class the right to pass zoning ordinances. By this act, the legislature has given such cities the power to provide for municipal zones.

The zoning ordinance of the city of Pittsburgh, approved August 9, 1923, is in accordance with the authority conferred with the Act of June 21, 1919, P. L. 570, and its amendments, and the fact that certain clauses thereof have been declared unconstitutional, does not strike down the whole ordinance.

A provision that there shall be a side yard on each side of a one family dwelling or double house, one of which shall be at least three (3) feet wide, and the total width of both side yards shall be not less than ten (10) feet, is constitutional. Such a provision is not contrary to the fifth and fourteenth amendments of the Federal Constitution or sections one or ten of Article I of the Constitution of Pennsylvania.

The Act of May 1, 1923, P. L. 122, which provides for the appointment of a Board of Appeals to review decisions of the officer charged with the enforcement of such zoning ordinance does not violate Art. III, sec. 20 of the Constitution of Pennsylvania.

Re-argued October 22, 1926. Appeal No. 44, April T., 1926, by petitioner, from order of C. P. Allegheny County, July T., 1925, No. 1209, in appeal of Charles O. Junge from a decision of the Board of Appeals under the zoning ordinance. Before PORTER, P. J., HENDERSON, TREXLER, KELLER and LINN, JJ. Reversed.

Petition to the Board of Appeals, City of Pittsburgh, under Zoning Ordinance of said city. Before FORD, J.

The facts are stated in the opinion of the Superior Court.

The original appeal was argued and an opinion delivered in Junge's appeal, No. 1, 89 Pa. Superior Ct. 543. Subsequently, a motion was presented by John D. Costello for reargument of the appeal, in order that he might intervene and attack the constitutionality of the said zoning ordinance. The petition was granted, limiting the re-argument to the question of constitutionality.

*F. C. McGirr,* for petitioner and intervener—The zoning ordinance is unconstitutional: Ambler Realty Co. v. Village of Euclid, Ohio, 297 Fed. 307; Smith v. City of Atlanta, 132 Southeastern Reporter, 66 Supreme Ct. of Ga., Feb. 11, 1926; Pennsylvania Coal Co. v. Mahon, 260 U. S. 393; Spann v. Dallas, 111 Texas 350; City of Dallas v. Burns, 250 S. W. 717; Friend v. City of Chicago, 261 Ill. 16; Ignaciunas v. Risley, 98 N. J. Law 712.

*Martin Croissant,* for appellant, cited: Porter v. Shields, 200 Pa. 241; McGarry v. Walsh, 213 A. D. 289; People ex rel Swedish Hospital v. Leo, 120 Misc. 355; Cooley's Constitutional Limitations, 7th Ed. Page 250; Hirsh v. Block, 267 Fed. 614; Panama R. Co. v. Johnson, 289 Fed. 964; Tyler v. Judges of Court of Registration, 179 U. S. 405; Lord v. Veazie, 8 How. 251; Chamberlain v. Cleveland, 1 Black 419; Kimball v. Kimball, 174 U. S. 158.

*Thomas M. Benner,* First Assistant City Solicitor, and with him *Charles A. Waldschmidt,* City Solicitor, for appellee, cited: Hadacheck v. Sebastian, 239 U. S. 394; Lincoln Trust Co. v. Williams Building Corp., 229 N. Y. 313; People ex rel. Sheldon v. Board of Appeals,

234 N. Y. 484; Opinion of Justices, 234 Mass. 597;
Ware v. City of Wichita, 214 Pacific 99; City of Des
Moines v. Manhattan Oil Co., 184 N. W. 823; State v.
City of New Orleans, 97 Southern, 440; State ex rel.
Carter v. Harper, 196 N. W. 451; State ex rel. Kellogg
v. Currens, 111 Wis. 431, at 435.

*Charles A. O'Brien* filed a brief as *amicus curiae*.

OPINION BY KELLER, J., March 3, 1927:

A short time after our decision in this case was
filed a petition was presented to this court by John T.
Costello, the owner of premises No. 804 Bellaire Ave-
nue, involved in the case, setting forth that no notice
of the appeals taken by Charles O. Junge to the Court
of Common Pleas of Allegheny County and to this
court, respectively, had ever been given him and no
copy of appellant's paper book served upon him, and
praying for a reargument of the appeal in order that
he might intervene and attack the constitutionality of
the Zoning Ordinance in question, and especially of
the section thereof involved in this case, on the ground
that it is not a lawful exercise of the police power or
justified by any consideration of the public welfare,
but is unreasonable, discriminatory and void and de-
prives him of property rights protected by the Con-
stitution of the United States and of this State; and
also that the Board of Appeals provided for therein
is an unconstitutional body, created in violation of
Article III, Section 20 of the Constitution of Pennsyl-
vania.

While we felt it was improbable that the petitioner
did not know that appeals had been taken from the
action of the Board of Appeals to the Court of Com-
mon Pleas and from the Court of Common Pleas to
this court, with ample opportunity to intervene in pro-
tection of his property interests, we were of opinion
that formal notice of the appeal to the Court of Com-

mon Pleas from the order of the Board of Appeals should have been given him as a party in interest, and we accordingly ordered a re-argument— to be confined to the constitutionality of the Zoning Acts and the ordinance in question, with leave to the said petitioner to intervene and attack the constitutionality of said acts and ordinance. As a matter of practice, in the future care should be taken that notice of appeal to the Common Pleas be given all parties appearing in the proceeding appealed from and proof thereof be filed among the records of the appeal in the Common Pleas.

The intervener does not attack the constitutionality of the statutes authorizing the enacting of zoning ordinances in cities of the second class, except in one particular which will be considered later. He evidently concedes that the general assembly has the power to authorize general municipal legislation of this character provided the ordinances are reasonable and not discriminatory, and have a rational relation to the public safety, health or general welfare. The attack, in this respect, is directed against the ordinance enacted by the City of Pittsburgh pursuant to such authority.

The ordinance is the same that came before the appellate courts in White's Appeal, 85 Pa. Superior Ct. 502 and 287 Pa. 259, but the clause involved is different. In that case the courts passed upon clause (b) of Section 32, relating to front yards in the first area district, which provided that "When the front wall of eighty (80) per cent of all the buildings on one side of a street between two intersecting streets have been kept back from the street line, no building hereafter erected or altered, shall be placed nearer to the street line than the distance established by the majority of the eighty per cent at the time of the passage of this ordinance." It was held that the clause was arbitrary and unreasonable, and not a valid exercise of the police

power, in that the regulation created no uniform standard for buildings of the same class throughout the district, but varied from block to block in the same district, and on opposite sides of the same street in such district, according to the front line which happened to have been established by a percentage of the buildings in that block.

The clause complained of in this case is part of the same section but relates to *side yards* and is as follows:

"Side Yard: There shall be a side yard on each side of a One Family Dwelling or Double House, one of which shall be at least three (3) feet wide and the total width of both side yards shall be not less than ten (10) feet. In the case of a Two Family Dwelling there shall be a side yard on each side of the building, one of which shall be at least five (5) feet wide and the total width of both side yards shall be not less than thirteen (13) feet."

The constitutional provisions involved are the fifth and fourteenth amendments to the Federal Constitution and Sections 1 and 10 of Article I of the State Constitution. They are along parallel lines and protect the individual in his enjoyment of his property by forbidding (1) the taking of private property without compensation, and (2) depriving him of such property without due process of law.

In the White case, 287 Pa. 259, Mr. Justice KEPHART pointed out very clearly the difference between a taking of private property under the power of eminent domain, which involves the payment of compensation to the owner, and an interference with such property under the police power, which does not involve the payment of such compensation. This case is concerned with the latter.

The power of the legislature to regulate the construction of buildings, etc., within the limits of munici-

palities, or authorize the municipalities themselves so
to regulate them, in the interest of the public health,
safety and welfare, was early claimed in this Com-
monwealth and early sustained. By the Act of April
18, 1795, 3 Sm. L. 246, the authorities of the City of
Philadelphia were empowered to pass ordinances pre-
venting the erection of any wooden buildings within
a specified area. The act was declared constitutional
in Respublica v. Duquet, 2 Yeates 493, the brief of Mr.
Ingersoll in its support (pp. 497-499) being especially
interesting. See also Douglass v. Com., 2 Rawle 262.
This was followed by the Act of April 10, 1826, 9 Sm.
L. 194, Sec. 3, which authorized the councils of Pitts-
burgh and Philadelphia, respectively, to pass general
ordinances preventing the erection of wooden build-
ings within such limits as the said councils might fix.

The Act of April 21, 1855, P. L. 265, relating to the
City of Philadelphia, provided in Section 6 that,
"every new dwelling house shall also have an open
space attached to it in the rear or at the side, equal to
at least twelve feet square, and no building of any
kind shall be permitted to be erected on any street,
court or alley hereafter to be laid out, or if laid out
and wholly unimproved by brick or stone buildings
before the passage of this act, of a less width than
twenty-five feet." See Brice's App., 89 Pa. 85, 88.
And a more comprehensive act for the regulation and
inspection of buildings in the City of Philadelphia was
enacted in the same year, (Act of May 7, 1855, P. L.
464), which has been followed by statutes along similar
lines too numerous to require mention, which have ex-
tended such regulation, with its accompanying restric-
tions, to all classes of cities and to boroughs and town-
ships of the first class. See Lower Merion Twp. v.
Harrison, 84 Pa. Superior Ct. 574.

Statutes authorizing zoning ordinances go a step
beyond the ordinary regulation and inspection of

Opinion of the Court.      [89 Pa. Superior Ct.

buildings. The Act of June 21, 1919, P. L. 570 author-
izes cities of the second class in the interest of public
health, safety and general welfare to regulate and
limit by ordinance the height and bulk of buildings
thereafter erected or altered, and the areas of yards,
courts and open spaces in connection with buildings
thereafter erected or altered, and to regulate and re-
strict the location of trades and industries and the
location of buildings designed for specified uses; and
for each of the above purposes to divide the city into
districts, provided that the regulations relative to the
height of buildings and the area of yards, etc., shall
be uniform for each class or grade of buildings
throughout each district.

The ordinance here complained of (No. 372, ap-
proved August 9, 1923) divided the city into Use Dis-
tricts, Height Districts and Area Districts. The use
districts are five: Heavy industrial, light industrial,
commercial, "A" residence and "B" residence, the
last named being the most restricted. The height dis-
tricts are five: ranging from the first, 35 feet (2½
stories) to the fifth, 265 feet (21 stories). The area
districts are likewise five, with varying restrictions
not necessary to be recited at length. Intervener's
property is located in an "A" residence district, First
height district and First area district. The building
which he planned to erect on his lot was a one-family
dwelling, two and a half stories high. It did not con-
flict in any manner with the regulations of the ordi-
nance as respects use or height. It was not in accord,
however, with the regulations fixing the width of side
yards required for such dwelling in such an area dis-
trict. As pointed out in our first opinion the Superin-
tendent of the Bureau of Building Inspection refused
the permit because it did not comply with the regula-
tion as to side yards above quoted. Costello appealed
to the Board of Appeals created by the ordinance

which reversed the Superintendent and directed a permit to issue under a plan calling for a side yard of three feet on the west side and six feet on the east side. In his actual building operations he disregarded the limits fixed by the Board and built a stone structure completely across the west side of his lot and reduced the width of the side yard on the east side to three and a half feet. Again the Superintendent stopped him and again he appealed to the Board, which again reversed the Superintendent and directed the construction to proceed, without any finding, declaration or suggestion that the plans as first approved by it involved any practical difficulty or unnecessary hardships, requiring their alteration so that substantial justice might be done. It is not necessary to go over again what is contained in our former opinion. It is enough to say that we held that the action of the Board was arbitrary and without legal justification and constituted an abuse of discretion.

We have recited these facts at some length for the purpose of showing that the intervener's only ground of complaint as respects the ordinance is its requirement as to the side yards of a one-family dwelling in an "A" residence district. Alleged imperfections or defects in the ordinance touching the regulations for other height and use districts do not affect him; they do not interfere with his intended use of his property, or the height of the dwelling he proposed erecting. It is a well recognized rule that a court will never heed objections to the constitutionality of an act of assembly unless the complainant is affected by the particular features alleged to be in conflict with the constitution: Mesta Machine Co. v. Dunbar Furnace Co., 250 Pa. 472, 476; Com. v. Haldeman, 88 Pa. Superior Ct. 284, 289, 288 Pa. 81; Cooley's Constitutional Limitations, p. 214 (6th Ed.), p. 250 (7th Ed.). Our inquiry is, therefore, confined to (1) whether the ordinance as a

whole is unconstitutional and void as beyond the legislative sanction and authority; and (2) whether it is unconstitutional in the particular provision affecting the intervener.

(1) It may be admitted that such zoning ordinance without a statute authorizing it would be void in this State. Whatever may be the law in other states the decisions of our Supreme Court make it clear that in the absence of a grant of power from the Legislature the municipalities of this Commonwealth do not possess the authority to pass such ordinance: Kneedler v. Borough of Norristown, 100 Pa. 368. But as before pointed out the general assembly has given cities of the second class the power to legislate by ordinance upon the subject; and the general scope and purpose of the ordinance now in question is within the grant of power contained in the Act of 1919, supra; the title of the ordinance is in almost the exact language of the authorized powers committed to the City by the Act, and we are not convinced that the body of the ordinance departs so far from its declared purpose as to render it wholly void. The fact that the Supreme Court in construing the ordinance in White's App., supra., did not strike down the whole ordinance, but only the particular clause involved confirms us in this view.

(2) The constitutionality of zoning ordinances, or certain provisions of them, have been considered by the Supreme Court of the United States and by the courts of last resort of many states, and with a great diversity of opinion; in fact, some of the courts have with the lapse of time and the growth of authority changed their own views on the matter. The last expression on the subject is the decision of the Supreme Court of the United States in Village of Euclid v. Ambler Realty Co., — U. S. —— (71 L. Ed.), handed down November 22, 1926 (See Advance Opinions De-

cember 15, 1926, p. 171), which reversed the decree of the District Court for the Northern District of Ohio, 297 Fed. 307, relied upon by the intervener, and decided authoritatively that zoning ordinances which establish residence districts from which buildings devoted to trade and business are excluded are not because of that fact violative of the Federal Constitution. The ordinance in that case was framed upon lines very similar to this one, and the opinion is therefore peculiarly pertinent, so much so that whole pages from it might properly be incorporated into this opinion were it not for the fact that its length would be still more unduly extended.

Zoning ordinances of the same general character as this one have been sustained in Massachusetts (Opinion of Justices, 234 Mass. 597, 127 N. E. 525; Lowell v. Stoklosa, 250 Mass. 52, 145 N. E. 262; Spector v. Milton, 250 Mass. 63, 145 N. E. 265; Brett v. Brookline, 250 Mass. 73, 145 N. E. 269); New York (Lincoln Trust Co. v. Williams Bldg. Corp., 229 N. Y. 313, 128 N. E. 209; People ex rel. Sheldon v. Board of Appeals, 234 N. Y. 484, 138 N. E. 416; Wulfsohn v. Burden, 241 N. Y. 288, 150 N. E. 120); Illinois (Aurora v. Burns, 319 Ill. 84, 149 N. E. 784; Deynzer v. Evanston, 319 Ill. 226, 149 N. E. 790; in effect departing from People ex rel. Friend v. Chicago, 261 Ill. 16, 103 N. E. 609, cited by intervener); Ohio (Pritz v. Messer, 112 Ohio St. 628, 149 N. E. 30); Kansas (Ware v. City of Wichita, 113 Kans. 153, 214 Pac. 99); Iowa (Des Moines v. Manhattan Oil Co., 193 Ia. 1096, 184 N. W. 823); Louisiana (State ex rel. Civello v. City of New Orleans, 154 La. 271, 97 So. 440); Wisconsin (State ex rel. Carter v. Harper, 182 Wis. 148, 196 N. W. 451); Minnesota (State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, overruling adverse prior decisions in 134 Minn. 226; 136 Minn. 479; 145 Minn. 484); Rhode Island (City of Providence v. Stephens,

133 Atl. 614); California (Miller v. Los Angeles, 195 Calif. 477, 234 Pac. 381; Zahn v. Los Angeles, 195 Calif. 497, 234 Pac. 388).

On the other hand zoning ordinances have been held invalid in whole or in part in the following states: New Jersey (Ignaciunas v. Risley, 98 N. J. Law 712, 121 Atl. 783; affirmed 99 N. J. Law 389, 125 Atl. 121); Texas (Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513; City of Dallas v. Burns, 250 S. W. 717); Maryland (Goldman v. Crowther, 147 Md. 282, 128 Atl. 50); Delaware (Mayor etc. of Wilmington v. Turk, 129 Atl. 512); Georgia (Smith v. Atlanta, 161 Ga. 769, 132 S. E. 66); Missouri (State ex rel. v. McKelvey, 301 Mo. 1, 256 S. W. 474; City of St. Louis v. Evraiff, 301 Mo. 231, 256 S. W. 489). Most of these cases were concerned with provisions excluding small retail stores or business places from residence districts, and some of them recognized that reasonable area restrictions in the ordinance might be valid. Thus in Goldman v. Crowther, supra, the court did not pass on the provisions of the ordinance regulating the height of buildings and the areas of yards and open spaces adjacent thereto, as well as the number of families who might dwell therein, saying, "Whether these provisions are valid may depend upon facts which are not before us, for this court has decided that regulations of that general character may be enforced where they are needed for the protection of the public safety, health or morals, and whether in a given case they are so required must depend on the circumstances of that case." It is also to be noted that in the Maryland and Missouri cases cited no general statutes authorizing such ordinances had been passed by the Legislature. In Smith v. Atlanta, supra, the decision was restricted to a ruling that a small retail store could not be excluded from a residence neighborhood, the court saying: "We do not mean to hold or intimate that the

entire act or the entire ordinance is invalid," and the same court in Blackman Health Resort v. Atlanta, 151 Ga. 507, 107 S. E. 525, upheld the restriction of a private sanitarium, hospital or boarding house from a residential district. In Mayor, etc., of Wilmington v. Turk, supra, where it was held that a small private hospital could not be excluded from a residential district, the court said: "Many features of the ordinance are within the legitimate field of legislation available for occupancy by the police power." In Spann v. City of Dallas, supra, Eubank v. City of Richmond, 226 U. S. 137, and Willison v. Cooke, 54 Colo. 320, 130 Pac. 828, the provisions held invalid were similar to the clause held to be unconstitutional in our own case of White's App., supra, in that no definite uniform standard was fixed by the city in the ordinance, but the restriction was determinable by a percentage of the property owners of the district.

While in Massachusetts an amendment to the state constitution, (the 60th), gives to the General Court the power to limit buildings according to their use or construction to specified districts of cities and towns, the Supreme Judicial Court in Opinion of the Justices, supra, pointed out that the same question arose and had to be considered as respects the Federal Constitution, and that despite the state amendment the ordinance must fall if it violated the Federal amendments; and in the Euclid case it was stated that the question was the same under both constitutions.

In our own State Mr. Justice KEPHART has pointed out (White's App., supra, p. 266) that the attempted exercise of the police power under zoning regulations "must have a substantial relation to the public good within the spheres held proper. It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely aesthetic considerations."

The trend of authority seems to be that reasonable

regulations fixing the minimum area of side yards in residential districts is likely to promote the public health, safety and general welfare and therefore furnish justification for the exercise of the police power in that respect.  In the Euclid case Mr. Justice SUTHERLAND said: "There is no serious difference of opinion in respect of the validity of laws and regulations fixing the height of buildings within reasonable limits, the character of materials and methods of construction, and the adjoining area which must be left open in order to minimize the danger of fire or collapse, the evils of overcrowding and the like, and excluding from residential sections offensive trades, industries and structures likely to create nuisances." In State ex rel. Carter v. Harper, supra, the court said, "Fresh air and sunshine add to the happiness of the home and have a direct effect upon the well being of the occupants.  ...... If such regulations stabilize the value of property, promote the permanency of desirable home surroundings and if they add to the happiness and comfort of the citizens, they thereby promote the general welfare."  In State ex rel. Civello v. City of New Orleans, supra, the court held such comprehensive zoning regulations might be sustained "on considerations of public health, safety, comfort or general welfare in view of better police protection, economy in street paving, lessening of fire hazard and likelihood of business establishments being a genuine nuisance."  In Wulfsohn v. Burden, supra, the court sustained the provisions of an ordinance restricting the height of apartment houses and prescribing the open area surrounding them, saying: "The open spaces not only tend to minimize the danger of fire to adjoining buildings and thus a spreading conflagration, but they also afford a greater opportunity for access by fire departments to a burning building and thus increase the possibility of successfully stopping a con-

flagration before it spreads to other buildings." In Brett v. Brookline, supra, an ordinance was sustained which created a residence district in which only *detached* one-family dwellings could be constructed, the court saying: "The space between buildings likely to arise from the separation of people into a single family under one roof may rationally be thought also to diminish the hazard of conflagration in a neighborhood. Statutes designed to minimize this hazard by regulations as to mechanical construction, air spaces, and similar contrivances are familiar and have been upheld." In Bebb v. Jordan, 111 Wash. 73, 189 Pac. 553, an ordinance of the City of Seattle prescribing a court area for light and air of at least 1680 square feet for an apartment house of a certain height was sustained as a valid exercise of the police power. In Pritz v. Messer, supra, the Supreme Court of Ohio said: "If a law regulating the air space which must be allowed in a tenement house has a reasonable relation to health, we cannot say that a measure which will save considerable districts for the city in which the air space is unblocked by massed building construction has no reasonable relation to health. The mere fact that the economic factor looms largest in determining the choice of a residence does not mean that restrictions which give space and air, light and separation to houses will not eventually shape the kind of building which is done, and benefit the public health."

In view of the relation of sufficient light and air to the health of a community, the increased protection from fire hazard which results from the erection of separate dwellings with open spaces between, the relief from overcrowding, with its consequent increase in traffic and confusion, assured by such separation, as well as other considerations not necessary to detail, we are not satisfied that the restriction complained of

by the intervener is clearly arbitrary and unreasonable and bears no substantial relation to the public health, safety, or general welfare, such as to require us to declare it unconstitutional and void: Village of Euclid v. Ambler Realty Co., supra (p. 178 of Advance Opinions). We do not attempt, however, in this case to pass upon all the provisions of the ordinance. Many questions may arise under it not necessary to be disposed of now and we leave them for consideration when presented. It is, however, proper to say that one feature of the ordinance attacked by the intervener as unreasonable and arbitrary has been misunderstood by him. The ordinance does not provide that a one-family dwelling must have a lot of 4,000 square feet and a two-family dwelling a lot of only 2,500 square feet, but that the lot area of a two-family dwelling must be 2,500 square feet per family, or 5,000 square feet, which is in keeping with the side yard requirements for a two-family dwelling as stated above.

The owner of adjacent or nearby property is a person aggrieved by the action of the Board of Appeals: Ayer v. Cram, 242 Mass. 30, 136 N. E. 338. Hence, the appellant Junge was entitled as a person aggrieved to appeal under Section 5 of the Act of May 1, 1923, P. L. 122, from the decision of the Board of Appeals to the Court of Common Pleas. It is immaterial that the house constructed on his own lot before the passage of the zoning ordinance has a wooden stairway on its east side which obstructs the yard on that side in much the same manner that the solid masonry structure supporting the intervener's stone steps and porch block up the latter's west side yard. The ordinance only applies to buildings erected or altered *after* the passage of the ordinance. Such a provision is not an unlawful discrimination: City of Aurora v. Burns, supra; Zahn v. Los Angeles, supra, Spector v. Milton, supra; in fact, in view of the limitation contained in

the enabling act, it could not be sustained were it otherwise. The ordinance in consequence, does not apply to Junge's present construction, but if it is altered or rebuilt he will have to conform to the same requirements. The ordinance would be useless if its requirements were not enforced as long as there were existing structures which did not conform to the new regulations.

The intervener also attacks the constitutionality of the Act of May 1, 1923, P. L. 122, which empowers the mayor with the approval of the council to appoint a board of appeals, as well as those sections of the ordinance making provisions for such a board pursuant to the Act, as being in conflict with Art. III, Section 20 of the State Constitution which forbids the General Assembly to delegate to any special commission any power to make, supervise or interfere with any municipal improvement, money, property or effects, or to levy taxes or perform any municipal function whatever. The intervener is scarcely in a position to raise this point. It was he, not the City or Junge, who appealed to the board he now attacks and asked it to set aside the action of the Superintendent of Building Inspection, and who set in motion its activities in the case. It was held in Dewhurst v. City of Allegheny, 95 Pa. 437, that one who petitions for a city improvement authorized by a special act of assembly and is active in setting in operation the machinery by which the work is done, is estopped from denying the constitutionality of the act. To the same effect, see Hirsh v. Block, 267 Fed. 614. Furthermore, the intervener has not been injured by any decision of the board; on the contrary it decided in his favor on both appeals. If that feature of the ordinance is struck down the intervener will be bound to conform to the rigid requirements of the ordinance which call for a side yard on each side of his dwelling, one of

which must be at least three feet wide and the total width of both side yards at least ten feet, instead of the nine feet fixed by the first and unappealed decision of the board.

But we are not convinced that the authority thus given the city by statute is unconstitutional. The purpose of the above mentioned provision in the Constitution was to prohibit the Legislature, either directly or indirectly, from taking away municipal powers from the municipal authorities and conferring them on outside bodies, as had been done by the General Assembly from time to time prior to the adoption of the Constitution of 1873, notably when the Legislature in 1870 created and appointed the Public Buildings Commission of Philadelphia (Act of August 5, 1870, P. L. (1871) 1548). The Legislature did not appoint the Board of Appeals nor has it delegated to it the municipal function of establishing zoning regulations and restrictions nor of enforcing them. The council enacted the ordinance and the Superintendent of Building Inspection, an officer of the city, is charged with the duty of enforcing it. The Board of Appeals is a body created by the city (appointed by the mayor and confirmed by council—pursuant to an ordinance of the city) as an arm or bureau of the city government to pass upon cases where it is alleged there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance, and if it find such to exist to modify the requirement, provided it can be done in such a way that the spirit of the ordinance is observed and without injury to the public health, safety and general welfare. The city council is not forbidden to perform certain of its functions by the aid of agents or commissions appointed by it. This is especially the case where new municipal powers or functions are conferred on the city. The Board of Appeals does not make zoning regulations

for the city; it can only, as the authorized agent of the city, modify the regulations in individual cases where the circumstances warrant the application of the relief under the provisions of the ordinance.

This is the construction put on Art. III, Sec. 20, which has resulted in legislation authorizing the municipalities of the Commonwealth to use boards and commissions to assist in performing many of the details of municipal government. Under these acts authority has been given cities, boroughs, etc., to appoint: Boards of Health (Acts of June 1, 1885, P. L. 37, Art. III, Sec. 1; May 23, 1889, P. L. 277, Art. XI, Sec. 2); Civil Service Commissions (Acts of June 25, 1919, P. L. 581, Art. XIX, Sec. 5; May 23, 1907, P. L. 206, Sec. 2; May 3, 1917, P. L. 138, Sec. 2; June 20, 1917, P. L. 618, Sec. 2; July 16, 1917, P. L. 1002, Sec. 2); Boards of Appeals in Building Inspection and Examining Commissions (Acts of May 5, 1899, P. L. 193, Sec. 9; June 7, 1895, P. L. 135, Sec. 5, pp. 137, 138); Boards of Revision of Assessments (Act of July 9, 1897, P. L. 219, Sec. 2); Sinking Fund Commissions (Act of June 27, 1913, P. L. 644, Sec. 1), and many similar agencies all of which would fall if the contention of the intervener were sustained. The construction of this section of the constitution accepted in practice for many years should be adhered to unless clearly in opposition to the constitutional provision. We do not think it is so opposed. The members of the Board of Appeals are appointed by the city authorities and are removable by the power which appointed them. The Constitution so provides in Art. VI, Sec. 4. It applies to municipal officers: Houseman v. Com., 100 Pa. 222; Ulrich v. Coaldale Borough, 53 Pa. Superior Ct. 246; Arthur v. Phila., 273 Pa. 419.

On full consideration of the case we are satisfied that the ordinance is not unconstitutional in its general scope or in the particular feature affecting the inter-

vener. We do not at this time pass upon any other of its specific provisions.

For the reasons set forth in our former opinion in this case, which it is not necessary to repeat, the order of the Court of Common Pleas appealed from is reversed and the record is remitted to the court below with directions to enter an order consistent with our opinion of February 26, 1926; and to require the building constructed on said lot to conform therewith.