## City of Meadville v. Zoria.

*Municipalities—Road law—Fixing width of street—Act of April 27, 1923 —Discrimination—City of third class.*

1. Neither under the Act of April 27, 1923, P. L. 107, nor under the general police powers has a city of the third class the power to enact that buildings may be constructed on one side of a street for its whole length to within four feet of its line, and direct that all buildings on the other side between certain designated cross streets be built back seventeen feet from the line.

2. Such discrimination is not justified by the fact that at the time the ordinance was enacted the physical conditions as to building-lines already adopted by property owners invited such discrimination.

3. An ordinance must not be unreasonable, oppressive, or inconsistent in its discrimination.

White's Appeal, 287 Pa. 259, followed.

Bill in equity for injunction. C. P. Crawford Co., Sept. T., 1926, No. 1.

*Dickson Andrews*, for plaintiff; *L. J. & S. A. Culbertson*, for defendant.

PRATHER, P. J.—This case came on for final hearing upon bill and answer and the presentation of testimony.

The pertinent facts are not in dispute, hence they are incorporated in our general discussion.

Meadville is a city of the third class. On Oct. 6, 1925, said city passed an ordinance for the purpose of "maintaining uniform building-lines on the east and west sides of Chancery Lane," a public thoroughfare in said municipality.

As the name implies, this thoroughfare was originally considered a lane or alley, perhaps due to the fact that its roadway, exclusive of sidewalks, does not exceed fifteen feet in width. Chancery Lane begins at the north with North Street and extends southwestwardly beyond Chestnut Street.

The ordinance under consideration provides: "That from and after the passage of this ordinance, no building, or any part or any projection of any building, shall be established, erected, placed and maintained nearer to the street-line of Chancery Lane than the following, with the limits as stated: From North Street south to Walnut Street, on the west side, seventeen feet; from Walnut Street south to Chestnut Street, on the west side, four feet; from North Street south to Chestnut Street, on the east side, four feet."

Defendant is the owner of a lot at the corner of Chancery Lane and North Street, fronting to the north on said street fifty feet, and extending along

the west side of said lane southwestwardly forty-nine feet. This lot on North Street is located in a solidly built-up business section, there being but two dwelling-houses in a distance of two city squares.

At the time of the enactment of said ordinance there were no vacant lots on either side of Chancery Lane from North Street to Chestnut Street; from North Street to Walnut Street there were no buildings on the west side of said lane nearer than seventeen feet; from Walnut Street to Chestnut Street, two squares on the west side, and from North to Chestnut, three squares on the east side, some buildings stood on either side of said lane as near the lines as four feet.

It is apparent that the ordinance, as to the four-foot limitation, on the one hand, and as to the seventeen-foot limitation, on the other hand, sought to accommodate its regulations to the building-lines already established by property owners, as evidenced by the buildings already constructed. Since the frontage of properties on said lane was entirely occupied by buildings prior to the enactment of this ordinance, it follows that the only property adversely affected by its restrictions is the corner lot at North Street and Chancery Lane, the property of defendant.

After the enactment of said ordinance, defendant constructed a garage on said lot on the west side of Chancery Lane, which occupied the ground up to within five feet of the west line of said lane. The prayer of the bill is for a decree directing its removal. The controversy centres upon the validity of said ordinance.

The authority of cities of the third class to legislate upon this question is granted by the Act of April 27, 1923, P. L. 107. It provides: "Cities of the third class are hereby authorized and empowered, by suitable ordinance, to establish and maintain uniform building-lines upon any or all public streets, roads, highways, lanes and alleys of said cities."

There can be no doubt concerning the authority of the City of Meadville under its general police power, "by suitable ordinance, to establish and maintain uniform building-lines upon" Chancery Lane, providing the exercise of such power promotes public welfare or safety or health within the statutory authorization: White's Appeal, 85 Pa. Superior Ct. 502.

The City of Meadville must find its power to regulate building-lines in some statute. The statute cited confers upon it power "to establish and maintain uniform building-lines upon streets, highways, lanes and alleys." Does this ordinance attempt to establish "uniform" building-lines, when it permits buildings to be constructed on the east side of this lane to within four feet of its line, and requires all buildings on the west side, between North and Walnut Streets, and immediately opposite, to be set back seventeen feet, and at the same time, beginning at Walnut Street on the west side, extending to Chestnut Street, moves this line east from the seventeen-foot line to four feet from the said lane? This is the absence of uniformity.

Why should the business block on Chancery and North, immediately east and opposite defendant's property, be allowed to build within four feet of Chancery Lane line and the defendant be moved back seventeen feet? If the answer is, the city adopted these discriminating prohibitions and regulations in its ordinance because at the time of its enactment the physical conditions as to building-lines already adopted by property owners invited such discrimination, then we must reply that such answer does not set forth a legal justification.

If uniformity is argued from the fact that the building-line on the east side is fixed at four feet throughout its entire course, what happens to this

argument when we parallel it with the fact that on the opposite side the building-line jogs thirteen feet in passing from one square to another?

For illustration, suppose that fire, flood or earthquake should destroy all the buildings on Chancery Lane within this zone, and the owners had come upon the ground to rebuild. Under this ordinance, the owner of the block at the east side of Chancery Lane, fronting on North Street, could rebuild to within four feet of the line of the lane, while the block owner opposite, the defendant in this case, must donate seventeen feet of his land to the public by setting back this distance.

An ordinance must not be inconsistent in its discrimination: Bryan v. City of Chester, 212 Pa. 262; it must not be unreasonable and oppressive: Kneedler v. Norristown Borough, 100 Pa. 368.

In White's Appeal, *supra*, where the building-line was to be determined by the distance from the street that 80 per cent. of the buildings had been located, the ordinance was unreasonable and invalid in this particular for want of uniformity.

Our Superior Court, in Junge's Appeal, No. 2, in an opinion filed March 3, 1927 [89 Pa. Superior Ct. 548], referring to White's Appeal, said: "It was held that the clause was arbitrary and unreasonable, and not a valid exercise of the police power, in that the regulation created no uniform standard for buildings of the same class throughout the district, but varied from block to block in the same district, and on opposite sides of the same street in such district, according to the front-line which happened to have been established by a percentage of the buildings in that block."

How, then, can a city justify a discrimination by ordinance in building-lines on opposite sides of the street and in adjacent blocks, which is as radically irregular as the one adopted by property owners in the White case?

The language of the Superior Court in White's Appeal, 85 Pa. Superior Ct. 502, 507, is appropriate to the facts in our present case: "Why should appellants not build as near the street-line as the lot owner at the corner of Friendship Avenue? Why not exercise the right enjoyed by those on the opposite side of the street, who, we were told at the argument, had built to the street-line? In Mahon v. Coal Co., 274 Pa. 489, the Chief Justice said: 'Of course, the cure must always bear a substantial relation to the existing evil, and must not constitute a mere attack on property rights, disguised as an exercise of the police powers.' In considering the same case (260 U. S. 393, at page 415), Mr. Justice Holmes said: 'The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far, it will be recognized as a taking. . . . We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. As we already have said, this is a question of degree, and, therefore, cannot be disposed of by general propositions.' "

In White's Appeal, the same case in the Supreme Court, 287 Pa. 259, 266, the Supreme Court, recognizing the power of cities to determine building-lines and discussing its limitations, said: "There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper. It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely aesthetic considerations. . . . While such regulations may not physically take the

property, they do so regulate its use as to deprive the owner of a substantial right therein without compensation. 'We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change:' Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 416."

In concluding that the provisions of the ordinance then under discussion, regulating building-lines, were invalid, the same court continued: "The application and consequence of this ordinance is a gross discrimination, in that it does not bear alike on all persons living within the same territory. Regulations which do not operate on all alike cannot be justified under the police power. Here it affects property differently on adjoining blocks, or within the same block or on opposite sides of the street."

The facts and ordinance in our case are so similar to the facts and ordinance in the White case that we are compelled to reach the same conclusion. The authorities seem abundantly clear that a municipality may not, under the guise of an exercise of police power, appropriate or confiscate a substantial part (in this case more than one-third of a corner lot on a business street) without compensating the owner. To affirm such a proposition merely because the result to be attained is desirable is to affirm it to the extent of appropriating the entire property without compensation, if the desirability is not satisfied with a shorter limitation.

The city council, co-operating with the planning commission, is to be commended for the zeal exhibited to beautify the city wherever it may provide uniform building-lines. But the patent lack of uniformity, growing out of an attempted accommodation to building-lines already established by the property owners, renders this ordinance oppressive, discriminatory, and, hence, invalid, when applied to the property of defendant. It follows that the bill should be dismissed, at the cost of plaintiff.

Now, April 4, 1927, a decree nisi is hereby entered dismissing plaintiff's bill, at the cost of the City of Meadville, which decree shall become final unless exceptions be filed thereto sec. reg.

J. Perry Eckels, Meadville, Pa.