# Humphreys v. Schofield, Director of Public Safety of the City of Philadelphia, et al.

*Joseph P. Gaffney*, for plaintiff.

*A. T. Ashton, James Francis Ryan, George Wharton Pepper* and *Theodore S. Paul*, for defendants.

STERN, P. J., May 3, 1930.—The plaintiff filed his petition for a writ of alternative mandamus against the Director of the Department of Public Safety and the Chief of the Bureau of Building Inspection to require them to issue to the plaintiff a permit for the erection of a certain building, or to show cause why such permit should not be issued. To this petition an answer was filed by the defendants. The Commissioners of Fairmount Park filed their petition for leave to intervene as parties defendant, which permission was duly granted, and said Commissioners also filed an answer to the plaintiff's petition. The petitioner filed a traverse to the answer of the defendants, and all of the parties entered into a written agreement that trial by jury be dispensed with, and that the case be tried before a judge of the court, the judgment of the court to be subject to appeal at the option of any of the parties.

The parties have presented to the court a statement of facts admitted by all of them to be true, and most of which are embodied in the findings of the court hereinafter made. Some of the facts agreed upon were not deemed by the court to be essential to the determination of the cause and, therefore, have been omitted from the court's findings.

Upon petition, answers, traverse, agreed statement of facts and testimony taken, the court makes the following

## Findings of fact.

1. The plaintiff is the owner of a certain lot or piece of ground situate in the Thirty-fifth Ward of the City of Philadelphia, described in his title deed as beginning at a point formed by the intersection of the southeast side of Bensalem Avenue (as laid down on the confirmed city plan one hundred and fifty feet wide) with the southwest side of Comly Road, and extending partly along the southwest side of Comly Road and partly along the southeast side of Bensalem Avenue, containing .2399 of an acre, more or less, said lot or piece of ground being of an approximate value of $2000.

2. On or about Nov. 2, 1928, the plaintiff filed with the Bureau of Building Inspection his application in writing, in due and legal form, for a permit to construct upon said ground a one-story brick building to be used for a service station. In said application the plaintiff described the location of said ground as "S. E. Cor. Roosevelt B'lv'd & Comly Road." Accompanying the application were plans and specifications of the proposed building in due and proper form.

3. On or about Nov. 8, 1928, the defendant Morris Brooks, Chief of the Bureau of Building Inspection, in writing notified the plaintiff's attorney that the application and accompanying documents were in conformity with the requirements of the building laws, but that the application had been disapproved by the Commissioners of Fairmount Park under authority of the Ordinance of Jan. 30, 1923, and, therefore, said defendant was obliged to refuse to grant the permit.

4. The plaintiff's application had in fact been disapproved by the Commissioners of Fairmount Park, intervening defendants herein, on or about Nov. 5, 1928, their action on said application being as follows: "Disapproved as prohibited by law." The said action was based solely upon the opinion of the Commissioners that a permit would have been in violation of the Ordinance of Jan. 30, 1923, as amended by Ordinance of July 10, 1928.

5. The Ordinance of Jan. 30, 1923, hereinbefore referred to, is as follows:

"An ordinance to establish regulations for the location, size and use of buildings adjoining Cobbs Creek Park and Parkway, and Roosevelt Boulevard.

"Section 1. The Council of the City of Philadelphia ordains, That no building, structure or fixture, any portion of which comes within two hundred feet from the boundary line of Cobbs Creek Park or Parkway and Roosevelt Boulevard, shall hereafter be erected, altered or used, except in conformity with the following regulations:

"No such building hereafter erected on a lot abutting on Cobbs Creek Park or Parkway and Roosevelt Boulevard shall be used for a stable, for a public garage, for any manufacturing purpose, or for the display of a billboard or roof sign, and no such building, structure or fixture shall be erected or altered until the location and plans therefor have been approved by the Commissioners of Fairmount Park, and no sign, notice or advertisement of any kind visible from any point within the boundaries of Cobbs Creek Park or Parkway and Roosevelt Boulevard shall be displayed thereon, unless the design and location of said sign, notice or advertisement have been similarly approved. No permit for such erection or alteration shall be issued until the approval of the Commissioners has been obtained, and the erection or alteration shall conform to the design, location and plans approved.

"Section 2. Any owner, tenant or occupant of a building, structure or fixture, responsible for its erection, alteration or use in violation of any of the foregoing regulations, shall be liable to a penalty of not less than five dollars nor more than twenty-five dollars, to be recovered for the use of the city before any Magistrate, as debts of like amount are now recoverable, and, if the portion of such building, structure or fixture, erected, altered or used or the sign, notice or advertisement displayed, in violation of any of said regulations, is not removed or the prohibited use is not discontinued within five days after the imposition of the penalty, the person offending shall be liable to a further penalty of twenty-five dollars a day, to be recovered as aforesaid, for every day after the expiration of the said period of five days, during which such violation continues.

"Approved the thirtieth day of January, A. D., 1923.

"J. HAMPTON MOORE,
"Mayor of Philadelphia."

6. Said Ordinance of Jan. 30, 1923, was amended by Ordinance of July 10, 1928, which is as follows:

"An ordinance to amend an ordinance entitled 'An Ordinance to establish regulations for the location, size and use of buildings adjoining Cobbs Creek Park and Parkway, and Roosevelt Boulevard,' approved January 30, A. D. 1923.

"Section 1. The Council of the City of Philadelphia ordains, That the ordinance entitled 'An Ordinance to establish regulations for the location, size and use of buildings adjoining Cobbs Creek Park and Parkway, and Roosevelt Boulevard,' approved January 30, A. D. 1923, is hereby amended by inserting after the word 'manufacturing' in Section 1 thereof the words 'or commercial.'

"Approved the tenth day of July, A. D. 1928.

"HARRY A. MACKEY,
"Mayor of Philadelphia."

7. By Ordinance of Dec. 24, 1902, the Board of Surveyors were authorized to place on the city plan an avenue 300 feet wide beginning at the intersection of Broad and Cayuga Streets following the direction therein more particularly set forth and extending to Torresdale.

8. By Ordinance of July 8, 1908, the Ordinance of Dec. 24, 1902, was amended by changing the terminus of this avenue from Torresdale to Solly Street, establishing a concourse at Solly Street, and further authorizing the Department of Public Works to project suitable avenues for development extending northwardly, northeastwardly and eastwardly from Solly Street.

9. By Ordinance of Dec. 14, 1910, the Department of Public Works was directed to notify property owners on the highways therein specified that said highways would be required for public use to their full widths "as now on the city plan, viz., the Boulevard from Rhawn Street to the Concourse at Solly Avenue; the Concourse at the Boulevard and Solly Avenue, and Bensalem and Poquessing Avenues from the said Concourse to the southwest boundary line of Pennypack Park, and Holme Avenue from said Concourse to Willets Avenue."

10. By Ordinance of June 28, 1915, the Department of Public Works was directed to notify owners of property that Bensalem Avenue, from Lexington Avenue to Welsh Road, would be required for public use.

11. By Ordinance of July 16, 1919, the Board of Surveyors was directed to change the name of "The Boulevard, from Broad Street to Solly Street, to The Roosevelt Boulevard."

12. By Ordinance of March 2, 1921, the Board of Surveyors was authorized to place upon the city plan Bensalem Avenue, of the width of 125 feet, from Welsh Road to Poquessing Creek, and by Ordinance of July 7, 1921, the Department of Public Works was authorized "to open to its full width as upon the city plan Bensalem Avenue from Welsh Road to Poquessing Creek."

13. By Ordinance of Jan. 5, 1922, "the Roosevelt Boulevard and its extensions as completed from time to time" were placed under the care and management of the Commissioners of Fairmount Park.

14. By Ordinance of June 16, 1924, the Philadelphia Rural Transit Company was authorized to operate motor busses "along Oxford Avenue to Roosevelt Boulevard, thence along Roosevelt Boulevard to Bensalem Avenue, thence along Bensalem Avenue to Southampton Road," etc.

15. By Ordinance of Dec. 23, 1925, the Department of Public Works was authorized to construct sewers in "Bensalem Avenue (east side) from Strahle Street to Lexington Avenue."

16. By Ordinances of June 28, 1926, and Sept. 21, 1926, an appropriation was made and authority given to the Department of Public Works for "the improvement of the east driveway of the Bensalem Avenue branch of the Roosevelt Boulevard from Grant Avenue to Poquessing Creek."

17. On the official city plan, as it existed on Jan. 30, 1923, and at all times since, the Roosevelt Boulevard (300 feet wide) extends from Broad Street to Solly Street, which is at the Concourse or Pennypack Circle. From this latter point there extend northwardly, northeastwardly and eastwardly three other avenues, to wit, Poquessing Avenue, Bensalem Avenue (150 feet wide) and Holme Avenue.

18. According to the official city plan, as it existed on Jan. 30, 1923, and at all times since, the plaintiff's property is located on Bensalem Avenue at its intersection with Comly Road, and is not situated on Roosevelt Boulevard.

19. The plaintiff's property does not, and never did, abut on Roosevelt Boulevard, nor does any part of it come within 200 feet thereof.

## Discussion.

The defendants rely for justification of their action in refusing the plaintiff's application wholly upon the Ordinances of Jan. 30, 1923, and July 10, 1928. The plaintiff contends that these ordinances are invalid and unconstitutional, and, furthermore, that they do not apply to his property.

Taking up the latter contention first, the chancellor is of opinion, and has found as a fact, that the plaintiff's lot or piece of ground upon which he wishes to erect a public service station is not on the Roosevelt Boulevard, and, therefore, is not subject to the ordinances forbidding the erection on that boulevard of buildings for commercial use. The plaintiff's ground is located on Bensalem Avenue, and, in the opinion of the chancellor, Roosevelt Boulevard, as that term is used in these ordinances, does not include Bensalem Avenue.

The Ordinance of Jan. 30, 1923, is a penal ordinance and must be strictly construed. Moreover, it is drastic, in that it takes away from owners the right to use their properties for various purposes. Therefore, when in such an ordinance the phrase "Roosevelt Boulevard" is used, it must be held to apply to what is officially known, or, to be more exact, what was officially known at that time, as "Roosevelt Boulevard."

As found by the chancellor in the findings of fact, it appears that Roosevelt Boulevard extends on the city plan only as far as Pennypack Circle or Solly Street. City Council itself passed the ordinance by which the Boulevard was thus designated, to wit, the Ordinance of July 16, 1919. The City Council also

expressly put Bensalem Avenue upon the city plan. All of the ordinances of Council referred to in the findings of fact expressly and carefully distinguish Roosevelt Boulevard from Bensalem Avenue, and in none of them is there indicated the slightest thought on the part of the municipal legislative body that Bensalem Avenue is included in the Roosevelt Boulevard. The only ordinances that can be deemed to have any leaning at all in favor of the defendants are those of Jan. 5, 1922, referring to "Roosevelt Boulevard and its extensions," and June 28, 1926, and Sept. 21, 1926, referring to the "Bensalem Avenue branch of the Roosevelt Boulevard." Even these ordinances, however, cannot be said to be helpful to the defendants' contention, because by the very use of the phrases "extensions" and "branch" it would appear that in the mind of Council, Bensalem Avenue, while perhaps properly designated as an extension or branch of the Roosevelt Boulevard, would not in the absence of those terms be considered a part of it. Moreover, even conceding that Bensalem Avenue is a branch of the Roosevelt Boulevard, that would no more make it the Roosevelt Boulevard than the Missouri River, which is a branch of the Mississippi River, is itself the Mississippi River and included within the latter name. The fact that Bensalem Avenue may more closely approximate a physical continuation of the Roosevelt Boulevard than the other branch avenues (Holme Avenue and Poquessing Avenue) is not significant, because there is nothing to prevent even a continuous boulevard from having different names at various places. We are all familiar with the Paris boulevards, whose adjoining parts are variously named.

In short, where an ordinance which greatly limits the use of property by its owners and which provides a penalty for its non-observance, contains the phrase "Roosevelt Boulevard," that term must be construed as being limited to or consisting of the avenue placed under such designation on the city plan by order of City Council and referred to in numerous other ordinances of City Council existing at the time of the passage of the ordinance in question.

The defendants made some point of the fact that in his original application for a permit the plaintiff himself referred to his lot of ground as being situate at the southeast corner of Roosevelt Boulevard and Comly Road. In the opinion of the chancellor, however, this is of no significance. The plaintiff could not change the names of the streets or the proper construction of the ordinances of Council by his own designation in that regard; neither is there any working of an estoppel, since the defendants were not in any way harmed or misled by this obvious slip on the part of the plaintiff.

For these reasons the chancellor has found that the ordinance relied upon by the defendants does not apply to the plaintiff's property, and this finding in itself entitles him to the relief sought by him and makes unnecessary a discussion of the other point raised by the plaintiff, namely, that the Ordinance of Jan. 30, 1923, as amended by the Ordinance of July 10, 1928, is invalid and unconstitutional. The chancellor, however, will state his views on this question for the purposes of the record on appeal.

As to that part of the Ordinance of Jan. 30, 1923, which provides that no building shall be erected or altered until the location and plans therefor have been approved by the Commissioners of Fairmount Park, and that no permit for such erection or alteration shall be issued until the approval of the Commissioners shall have been obtained, the chancellor is of the opinion that the same is unconstitutional. In the first place, under the decision of this court in Philadelphia v. Spangler, 9 D. & C. 577, there can be given to the Park Commissioners, in reference to the Roosevelt Boulevard, no greater powers than those of care and management, and these certainly would not justify

the right to pass judgment upon the buildings to be erected along the Boulevard and to issue decisions of approval or disapproval in regard thereto. In the second place, even if such power could be granted to the Commissioners of Fairmount Park, or to any other body, it could not be done in the vague and arbitrary manner provided for by the ordinance. The ordinance does not lay down any rules or regulations whatever upon which the discretion of the Commissioners is to be based. It gives them the absolute right to say whether or not a building shall be erected or altered, and an unlimited discretion as to the design and plans of the building and its location on the owner's lot of ground. Such a grant of power is without precedent in law. There is no right of appeal given. The Commissioners may in their unbridled exercise of power refuse permits for any buildings that are not built of marble, or that are more than two stories high, or are less than twenty stories high, or that are not built in a particular shape which the Commissioners may think desirable. They need give no reasons for their action. They may grant a permit for one building and refuse it for another on a different location, although the two buildings be identical in plan and design. They may refuse approval of a building purely on æsthetic grounds (but not stating this to be the reason for their action), although that would not be permissible under existing judicial decisions. It requires no elaboration of argument to come to the conclusion that such grant of power is wholly invalid.

This conclusion leads to the question as to whether the rest of the ordinance can stand independently, namely, the provision that no building, any portion of which comes within 200 feet from the boundary line of the Boulevard, can be erected on a lot abutting on the Boulevard for use as a stable, a public garage, or any manufacturing or commercial purpose, or for the display of a billboard or roof sign. In the opinion of the chancellor, this provision of the ordinance is severable. It is a categorical injunction that these uses of such buildings shall not be permitted. It is in fact a zoning ordinance. Its terms are clear and definite. It is not so connected and interdependent in subject-matter, meaning and purpose with the invalid provision (requiring the approval of the Commissioners of Fairmount Park) that it cannot be presumed that Council would have passed the one without the other, which is the test in such cases: 36 Cyc. 977. Neither does the chancellor find anything legally objectionable in this provision. While under the legislation of the state the Mayor may appoint a zoning commission, this is merely permissible and not mandatory, and there seems to be no reason why Council cannot itself provide a zoning regulation without any other governmental machinery in connection therewith. The entire subject of the validity of zoning laws has been so fully covered in such cases as White's Appeal, 287 Pa. 259; Junge's Appeal (No. 2), 89 Pa. Superior Ct. 548; Ward's Appeal, 289 Pa. 458; Gilfillan's Permit, 291 Pa. 358, and Kerr's Appeal, 294 Pa. 246, that no discussion is here necessary. The provision that manufacturing or commercial uses of buildings abutting on the Boulevard are prohibited seems so reasonably justified as being substantially based on considerations of public health, safety and general welfare that it cannot be contended that it is in any sense arbitrary or unreasonable. For these reasons, therefore, the chancellor is of opinion that this provision of the Ordinances of Jan. 30, 1923, and July 10, 1928, is valid and enforceable.

### Conclusions of law.

1. The Ordinances of Jan. 30, 1923, and July 10, 1928, are valid as to the provision forbidding the use of buildings for manufacturing and commercial

purposes on ground abutting on Roosevelt Boulevard. Said ordinances, however, are invalid and unconstitutional as to the provision granting the powers therein specified to the Commissioners of Fairmount Park.

2. Said ordinances are not applicable to the lot of ground owned by the plaintiff on Bensalem Avenue, that avenue not being the Roosevelt Boulevard within the meaning of said ordinance.

3. The plaintiff is entitled to the relief sought by him.

The court, therefore, enters the following

### Decree.

And now, to wit, May 3, 1930, it is ordered and decreed that a peremptory mandamus issue, ordering and directing the defendants, to wit, the Director of Public Safety and the Chief of the Bureau of Building Inspection of the City of Philadelphia, to issue to the plaintiff, in due form, a permit necessary for the construction and erection of the building proposed to be erected by him on the lot of ground, and according to the plans and specifications, described and set forth in the plaintiff's application for such permit dated Nov. 2, 1928.

2. The defendants to pay the costs.